(Decided 21st January, 1876.)

---

## The Maryland Fire Insurance Company *vs.* Alexander Gusdorf.

*Condition in a Policy of Fire Insurance waived by an Officer of the Company—Admissible Evidence—Equitable Estoppel— Meaning of the words "contained in" a particular building, as used in a Policy of Insurance.*

G. effected an insurance with the Md. Fire Ins. Co. for one year, on "Stock of goods, such as are generally kept in a country store, *contained in* a three story brick building, situated at Culpeper City, Culpeper County, Va." Among other things, the policy contained a clause or provision, "That anything less than a distinct agreement *endorsed* on this policy, shall be construed as a waiver of any written or printed condition, restriction or stipulation herein contained." The goods insured were damaged by fire during the time covered by the insurance; but not until they had been removed to an adjoining building. In an action on the policy by the insured, he testified that some time previous to the removal of the goods, he went to the company's office, and there saw the President, and notified him that he desired to move the stock of goods into another brick building adjoining

that in which they then were, and of the same character, and that he desired to know if there was any objection to his so doing; that the President then asked him if he had his policy with him, he replied he had not; that the President then said it was no matter, that he could fix it all right; and witness understood him to say it was not necessary for him to bring the policy The Company resisted payment on the ground that there was no endorsement on the policy, of assent to the removal of the goods; and objected to the evidence given by the plaintiff. HELD:

1st. That the testimony of the plaintiff was admissible.

2nd. That the Company was estopped by the acts and declarations of its President, from setting up as a defence to the action, the fact that the goods were so removed, and that the permission to do so was not endorsed on the policy.

In a policy of insurance on a stock of goods, the terms "contained in" a particular building, limit the risk to the time the goods remain in the same building in which they were when the policy was issued. They constitute a restriction upon the risk, and make it continue only so long as the goods remain in that particular building.

APPEAL from the Superior Court of Baltimore City.

This was an action of *assumpsit* brought by the appellee on a policy of insurance, executed on the 20th of December, 1872, and issued by the appellant. The facts of the case will sufficiently appear in the opinion of the Court. The verdict and judgment were for the plaintiff, and the defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, MILLER and ALVEY, J.

*N. M. Pusey*, for the appellant.

This is the case of a plaintiff seeking to *enforce a covenant* against a defendant, and at the same time *introducing parol evidence of a waiver of a stipulation in that covenant*— it is the introduction of parol evidence for the purpose of making a covenant apply to a *totally different subject-matter from that expressly stated in the covenant*.

The evidence admitted by the Court below, was improperly admitted for the following reasons :

1st. Had it not been that all errors of pleading were waived, the appellee under his declaration, could not have introduced the policy in evidence; but, having given the policy in evidence, the case then stands as if he had brought an action of covenant upon the policy, and in that event he could not have introduced the evidence, because it would have been a variance between the *allegata* and *probata*. *Neale, et al. vs. Fowler*, 31 *Md.*, 155.

2nd. It is a general and well established rule of evidence, applicable to written contracts, whether under seal or not, that parol testimony cannot be received to contradict, vary, add to or subtract form their terms ; the reason of the rule being that such a course " would tend in many instances to substitute a new and different contract for the one which was already agreed upon." 1 *Greenleaf on Ev.*, sec. 275 ; *Boyce vs. Wilson*, 32 *Md.*, 122, 127, 128 ; *Planters' Mutual Ins. Co. vs. Deford, et al.*, 38 *Md.*, 396.

3rd. At the time this consent to a removal of the goods was alleged to have been given, the goods were still in the store where they were when the insurance was effected— no loss had happened, and of course no *breach* had occurred. Upon this state of facts the evidence was improperly admitted. *Watchman and Bratt vs. Crook*, 5 *G. & J.*, 239, 258 ; *Franklin Fire Ins. Co. vs. Hamill*, 5 *Md.*, 170, 183, 185.

4th. To allow the appellee, in an action on this policy, founded upon an alleged breach on the part of the appellant to make good to him any such loss or damage as shall happen during one year from the date of the policy, to show by parol what was the subject-matter, the loss or damage to which appellant had covenanted to make good, would be contrary to the well established principle of the law that it is inconsistent with the legal attributes of an

instrument *under seal* that it should rest partly in writing and partly in parol. *Newcomer, et al. vs. Kline*, 11 *G. & J.*, 457, 465, 470; *Clarke vs. Lancaster's Lessee*, 36 *Md.*, 196, 203, 204.

5th. The evidence was improperly admitted because the words "contained in three story brick building" were designed to limit the risk of the company to the time the goods were in the particular building in which they were when the policy was issued—the word "contained" as used in the policy is restrictive; and the policy expressly states that "anything less than a distinct agreement endorsed on this policy, shall not be construed as a waiver of any written or printed condition, *restriction* or stipulation herein contained." *Annapolis & E. R. R. vs. Balto. Fire Ins. Co.*, 32 *Md.*, 37; *Wood vs. Hartford Fire Ins. Co.*, 13 *Conn.*, 533, 544; *Eddy St. Iron Foundry vs. Hampden Fire Ins. Co.*, 1 *Clifford*, 303; *Boynton vs. Clinton and Essex Mutual Ins. Co.*, 16 *Barbour*, 254, 258; *Lycoming Co. Ins. Co. vs. Updegraff*, 40 *Penn.*, 321; *Lewis vs. Springfield Fire Ins. Co.*, 10 *Gray*, 160, 161; *Bradley vs. Potomac Fire Ins. Co.*, 32 *Md.*, 115; *Schaefer vs. Balto. Marine Ins. Co.*, 33 *Md.*, 109; *Balto. Fire Ins. Co. vs. Loney, et al.*, 20 *Md.*, 35, 36; *Franklin Fire Ins. Co. of Balt. vs. Chicago Ice Co.*, 36 *Md.*, 118.

The remedy of the appellee, if he had any, was in equity. *National Fire Ins. Co. vs. Crane*, 16 *Md.*, 261, 295; *Carpenter vs. Providence Wash. Ins. Co.*, 16 *Peters*, 495; *Boyce vs. Wilson*, 32 *Md.*, 129.

The Court erred in its instruction because it nowhere appears in evidence that Mr. Milnor had authority to waive any of the conditions, restrictions or stipulations in the policy; such conduct was not within the scope of his ordinary duties, and the policy gave the appellee notice that the powers of the officers of the company were limited in that respect. *Bank of the U. S. vs. Dunn*, 6 *Pet.*, 51; *Leppoc, et al. vs. National Union Bk.*, 32 *Md.*, 146; *Com-*

*mercial Mutual Ins. Co. vs. Union Mutual Ins. Co.*, 19
*How.*, 322.

*Wm. F. Frick*, for the appellee.

Without raising the question, whether the removal of
the goods into an adjoining house, precisely similar to that
in which they were at the time of insurance—required a
*written* assent on the part of the Company, in view of the
general terms of description adopted by it in the policy, as
to the *location* of the goods, to wit: "In a three story brick
building, gravel roof, situated at Culpeper, Virginia,"
(inasmuch as the *written* description of the risk and loca-
tion was still absolutely true, as well after the removal as
before;) it is sufficient to say, that even if such an endorse-
ment was necessary, the Company is *equitally estopped* by
the conduct of the President, from raising any such defence.
To allow it, would be to sanction the perpetration of a fraud
by the company upon the insured. *Natl. Fire Ins. Co. vs.
Crane*, 16 *Md.*, 295 ; *May on Insurance, sec.* 499, *et seq.*
(*Ed. of* 1873;) *Union Mutual Ins. Co. vs. Wilkinson*, 13
*Wall.*, 222 ; *Franklin vs. Atlantic Fire Ins. Co.*, 42 *Mis-
souri*, 460 ; *Rowley vs. Empire Ins. Co.*, 36 *N. Y.*, 554 ;
*Combs vs. Hannibal Ins. Co.*, 43 *Missouri*, 150 ; *Horwitz vs.
Equitable Mut. Ins. Co.*, 40 *Missouri*, 560 ; *Hyatt vs. Waite*,
37 *Barb.*, *N. Y.*, 29.

MILLER, J., delivered the opinion of the Court.

This case involves a small amount of money, but pre-
sents a question of much importance in insurance law,
which has not hitherto been decided in this State. By the
policy sued on, the appellants, in consideration of a pre-
mium of $25, paid them by the appellee, insured the lat-
ter for one year, to the amount of $2000, "on stock of
goods such as are generally kept in a country store, *con-
tained in* three story brick building situated at Culpeper
City, Culpeper County, Virginia." Among others, the

policy contains a clause or provision "that anything less than a distinct agreement *endorsed* on this policy shall not be construed as a waiver of any written or printed condition, *restriction*, or stipulation herein contained." The action was in *assumpsit*, and the policy was under seal, but all errors of pleading were waived by agreement. The fire and damage to the goods to the extent, as found by the jury, of $429.81, occurred during the year, but not until after the goods had been removed to an adjoining building. The insurance was effected by the plaintiff himself, by negotiations with the president of the company, who issued the policy. As to the circumstances under which the goods were removed, the plaintiff testified that some time previous to the removal he went to the company's office, and there saw the president, and notified him that he desired to move the stock of goods into another brick building, adjoining that in which they then were, and of the same character, and that he desired to know if there was any objection to his so doing ; that the president then asked him if he had his policy with him, to which, not knowing it was necessary he should have brought it, witness replied that he had not brought the policy with him ; that the president then said it was no matter, that he would fix it all right, and witness understood him to say it was not necessary for him to bring the policy. The Court, against the objection of the company, admitted this testimony, and instructed the jury that if they found it to be true, then the company cannot avail itself, as a defence to this action, of the fact that the goods were so removed, and that the permission to do so was not endorsed on the policy. Are these rulings correct?

Apart from decisions elsewhere to the same effect, our own decision, in *Annapolis & Elk Ridge Rail Road Co. vs. The Baltimore Fire Ins. Co.*, 32 *Md.*, 37, is conclusive upon us that the terms "*contained in*" a particular building, limit the risk to the time the goods remained in the same

building in which they were when the policy was issued. They constitute a restriction upon the risk and make it continue only so long as the goods remained in that particular building.

This being so, it is insisted on the one side, that these rulings infract the cardinal and salutary rule of evidence, that parol testimony is inadmissible to contradict or vary the terms of a written instrument, and on the other, that the company is estopped by the assertions and declarations of their president, upon which the assured relied and acted in removing his goods, from setting up this defence.

In *National Fire Ins. Co. vs. Crane*, 16 *Md.*, 260, which was a case in Equity, (and most elaborately argued and carefully considered, both in the Court below and in this Court,) the policy provided that if the assured had taken out any other insurance on the property, it should *be void* unless he notified the same to the company and caused the same to be *endorsed* on the policy. It was proved by parol evidence that the assured, before the policy was issued, did notify the president of the company of a prior insurance, but the latter issued the policy without the required endorsement and received the premium, his clerk saying it was all right. In noticing the defence, that the endorsement was not in fact made, this Court say "whatever effect the want of such endorsement may have *at law* in an action on the policy, it cannot be urged in a Court of Equity in a case otherwise free from difficulty." Then, after adverting to the too common practice of insurance companies to meet applications and refuse adjustments on frivolous and unjust pretences, in order to defeat fair claims, on contracts of which good faith is the very essence, and noticing the fact that the insurance was sought and the policy issued by the president of the company, whose duty it was to make the endorsement, they say, in very just and forcible language, "in such a case we are called upon to say the insured is without

remedy ; on the contrary, we think it would be a reproach to the jurisprudence of the State, if this company were discharged from their contract on any such ground." Here the acts, omissions of duty and declarations of their president were held in equity to estop the company from setting up an inequitable defence.

Since that decision, the doctrine of equitable estoppel has, especially in insurance cases, been extended and applied at law as well as in equity, by adjudications of the Courts of last resort in many of the States, and the current and weight of judicial precedent and authority in this country, have established the proposition that, in such cases, the estoppel is equally available in either tribunal. The Supreme Court in *Wilkinson's Case*, 13 *Wallace*, 222, has also in a very able opinion sustained this position. That was an action at law on a life insurance policy, in which some of the answers to the written interrogatories in the application, made material to the risk, were proved to be untrue. Parol evidence was then introduced by the plaintiff, to show that these answers were in fact put in by the company's agent, on his own judgment, based on information derived from other sources than the statement of the applicant who refused to answer in these particulars, saying he knew nothing of the matters inquired of. The Court held the evidence admissible, and that the company was estopped by these acts of the agent, who in thus filling up the application was to be regarded as *their agent*, notwithstanding the application was signed by the applicant, and the answers purported on the face of the instrument to be his answers. The Court in their opinion, whilst ascribing to the rule of evidence its just importance, yet affix to it the proper limitation that it ought not to become the instrument of the very fraud it was intended to prevent, and after adverting to the facts of the case say "it is in precisely such cases as this, that Courts of law in modern times have introduced the doctrine of equitable

estoppels, or as it is sometimes called estoppels *in pais.*
The principle is that where one party has, by his repre-
sentations or his conduct, induced the other party to a
transaction to give him an advantage, which it would be
against equity and good conscience for him to assert, he
would not in a Court of justice be permitted to avail him-
self of that advantage.'' This proposition thus sustained
by the modern decisions, and founded in reason and jus-
tice, they add, does not admit that the written instrument
may be contradicted by oral testimony, but goes upon the
idea that it may be shown by such testimony, that the
written instrument cannot be *lawfully used* against the
party whose name is signed to it.

. Most of the reported cases in which this doctrine has
been applied, are those where the acts, representations or
omissions of the agents of the companies, precede or attend
the issuing of the policies. But it is also applicable where
facts arise during the currency of the contracts, as for in-
stance, where in case of insurance by a mutual insurance
company, assessments have been made and received by the
company on the premium note, or where premiums have
been received after knowledge, actual or constructive, of
the invalidity of the policy *ad initio,* or of a subsequent
breach of its conditions. *May on Ins., sec.* 502. In our
opinion, the case before us falls clearly within the principle
thus established, and it is no extension of the doctrine thus
to apply it. The assured before removing his goods, applied
in person to the president of the company, and asked
him if there was any objection, that is, would the removal
affect the continuance of the insurance upon them? He
was informed by the president, who knew of the absence
of the policy at the time, that it was no matter, that he
would fix it all right, and that he need not bring the
policy, that is, he said to the assured, in effect, go on and
remove your goods, you need not bring your policy, and
have the permission to do so, endorsed on it, the insurance

shall continue in force without such endorsement. The assured departs and removes his goods, relying upon the statements and assurance thus made and given to him. By so acting, he did that which prejudiced his interest under the policy. He thereby gave the company the advantage of retaining the premium without further continuance of the risk, and also the advantage of setting up this defence against their liability after the loss had occurred. Would not the success of this defence operate a fraud upon the assured? We think it clear the company ought to be, and are estopped from making it. Whilst the law affords ample protection to these companies, as well as to individuals, against frauds, misrepresentations and breaches of warranty, it will not and ought not to help them to perpetrate frauds upon those with whom they make contracts, in which good faith on both sides, as well in their continuance, as origin, has always been regarded as a ruling consideration.

In all the cases in which this doctrine has been applied, the companies have been held bound by the acts and declarations of their officers and agents. No difficulty has arisen in any of them, as to the authority of such agents in this respect, and we entertain none in this case. The terms of this policy are not more stringent in this particular, than in that in *Crane's Case*, and others cited by the appellee's counsel in his brief. Unquestionably, the president was a proper party to apply to, in order to have the endorsement made on the policy according to its terms, and his endorsement and signing of the agreement, giving permission to remove the goods, would, without doubt, have bound the company. That being so, we see no reason why his declarations and acts, when applied to on the subject, dispensing with the endorsement, and inducing the assured to act without it to his prejudice, should not bind the company equally, as if he had issued the policy by dispensing, in the same manner, with some of the conditions, com-

pliance with which was by its terms made essential to its becoming a valid contract.

Nor is there any express and controlling decision in this State, that compels relief in such a case to be sought in a Court of Equity. The cases on this point referred to by the appellants' counsel, are merely to the effect that a written instrument can be *reformed in equity only,* where by mistake or accident, it has failed to express the contract which the parties actually made, and that parol proof is inadmissible *at law,* to accomplish that result. This is the extent to which our own decisions have gone. They have carefully left open the question which this case presents.

For these reasons, we are of opinion there is no error in the rulings excepted to, and the judgment must be affirmed.

*Judgment affirmed.*

(Decided 21st January, 1876.)