7 N.J. Super. 379 (1950)
71 A.2d 148
MORRIS SUGARMAN, PLAINTIFF,
v.
THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 20, 1950.
*380 Mr. Paul Rittenberg, attorney for plaintiff.
Messrs. Markley & Broadhurst, attorneys for defendant.
GRIMSHAW, J.S.C.
Plaintiff sues to compel the reinstatement of a policy of life insurance which lapsed by reason of the failure of the insured to pay a quarterly premium due on *381 October 13, 1943. No testimony was taken, the case being submitted upon an agreed state of facts.
On October 13, 1938, the defendant company issued a policy upon the life of the plaintiff, Sugarman, in the face amount of $25,000, with a quarterly premium of $441.75. Thereafter, on February 6, 1940, upon the request of Sugarman, the policy was rewritten at standard rates, the change resulting in a reduction in the amount of the quarterly premium to the sum of $379.25. The quarterly payments of premium to and including July 13, 1943, were made. The premium due on October 13, 1943, was not paid, nor was it paid during the 31-day grace period provided by the policy. The policy provided that within 3 months after default in the payment of any premium after two years' premiums had been paid, the insured might elect (a) to surrender the policy and receive its net cash value; (b) continue the policy as paid-up life insurance; or (c) continue the insurance as non-participating paid-up extended term insurance under the conditions outlined in the policy. It was further provided that if the insured failed to elect one of the options within 3 months after default, the insurance would be continued as provided under option (c).
Sugarman failed to elect any of the options outlined above and, on February 9, 1944, the defendant forwarded to him a notice stating that as a result of the default in payment of the premium due October 13, 1943, his policy would be continued in force as paid-up extended term insurance for $25,306 until, but not including January 2, 1948.
Some time prior to January 13, 1944, plaintiff received a notice of premium due January 13, 1944, in the amount of $379.25. Upon the reverse side of the premium notice, among other things, was the statement, "If any claim for a right of forfeiture, or any default on the part of the holder of said policy now exists or shall exist before the due date of the premium referred to in this notice, the Society does not, by this notice, waive the same." Under date of February 10, 1944, a check in the amount of $375.25 was forwarded to the defendant, by Sugarman. Whether this check was tendered *382 as payment of the premium due October 13, 1943, or of the January 13, 1944, premium mentioned in the notice does not appear. By letter dated February 15, 1944, the defendant company returned the check to Sugarman with the statement that the policy had lapsed. Following the receipt of this letter, Sugarman did nothing until shortly before the expiration date of the term insurance. In the intervening period he did not seek the reinstatement of the policy nor, so far as the record shows, did he communicate with the company. Then, on December 17, 1947, four years after the default, Sugarman filed this complaint.
At the time of the default, the policy had a cash surrender value of $1,435. Defendant also had in its possession funds of Sugarman in the amount of $3,028.68, for which plaintiff held a certificate of deposit issued by the defendant company. The sum of $3,028.68 represented the proceeds of a policy upon the life of the plaintiff which had matured in 1942. When this policy matured defendant sent to plaintiff its check for $3,028.68. By letter dated May 15, 1942, plaintiff returned the check to the defendant. In the letter plaintiff stated: "I want you to keep this check as a deposit with your company, and I would ask you to mail me the interest yearly at my home address which is as follows: `Morris Sugarman, 279 Terhune Ave., Passaic, N.J.'" Following the receipt of the letter and check, defendant issued and forwarded to the plaintiff the certificate of deposit. Among other things, the certificate provided that at any time Sugarman could withdraw the whole or any part of the deposit in amounts of not less than $100.
In support of his prayer for relief, plaintiff says that defendant habitually accepted premium payments after the expiration of the period of grace. As a result, plaintiff says, he was led to the conclusion that defendant had waived the provision of the policy concerning the payment of premiums and that a lapse of the policy would not follow a delay in the payment of premiums. I am not impressed with the argument. There is no doubt that it is always open to the insured to show a course of conduct on the part of the insurer *383 from which an inference might justly and reasonably be drawn that a forfeiture would not be exacted. Graham v. Security Mutual Life Ins. Co., 72 N.J.L. 298 (E. & A. 1905). But no such showing was made in this case. There were 19 premium payments made during the life of the policy. Of these payments, three were received by the company after the expiration of the grace period. One of the payments was received three days late and the other two were received one day late. And in each instance, the check was dated, and presumably sent, several days before the period of grace had ended. On the basis of such a record it cannot seriously be urged that Sugarman would be justified in concluding that he might, with safety, entirely ignore the premium due on October 13, 1943, or, at least, do nothing about it until the time for the succeeding premium payment had arrived.
Also, plaintiff argues, the defendant should have used funds of the plaintiff in its possession for the premium payment rather than declare that the policy had lapsed. The funds to which plaintiff has reference were the amounts of $3,028.68, represented by the certificate of deposit, and $1,435, being the cash surrender value of the policy. Either amount was, of course, more than sufficient to meet the October 13th premium payment. Plaintiff says that the insurer was bound to use either or both of those funds for premium payments before declaring a default. In support of his contention, plaintiff cites Bushko v. First Uhro, etc., Benefit Society, 106 N.J.L. 504 (E. & A. 1929), and Ruderman v. Massachusetts Accident Co., 120 N.J. Eq. 251 (E. & A. 1936), and also a number of decisions from southern jurisdictions. An examination of the Ruderman and Bushko cases leads me to the conclusion that they do not aid the plaintiff. In both cases, under the terms of the policy there in question, the insurer was in default in the payment of benefits at the time the lapse of the policy for unpaid premiums was declared. In each case the overdue benefit payments for which the company was liable, exceeded in amount the unpaid premium. And no affirmative action by the insured was required to make the funds available for the premium payments.
*384 In this case, the disposition of the fund of $3,028.68 was controlled by the deposit agreement. Any deviation from the terms of the contract without the consent of Sugarman would have rendered the company liable for an unauthorized diversion of the fund. Had Sugarman desired any part of the deposit to be used for premium payments, he could have arranged such use. His failure to do so tied the hands of the defendant. So, too, with the cash surrender value of the policy. Sugarman could have borrowed upon the policy a sum sufficient to meet the premium payment had that been his wish. Here again, affirmative action on the part of Sugarman was required. In the absence of such action, the company could do nothing but follow the provisions of its contracts as expressed in the policy and the certificate of deposit.
The authorities from other jurisdictions cited by the plaintiff in his brief give full support to his contentions. But I am unable to subscribe to the conclusions expressed therein, at least so long as we continue to hold that a policy of insurance is a contract binding upon both parties to it.
It needs no citation of authorities to support the proposition that forfeitures are not favored in the law and courts will seek to find circumstances justifying an avoidance of the forfeiture. In this case, however, such circumstances are not shown. The defendant fulfilled all of its obligations. Sugarman, on the other hand, with ample funds available to meet his payments, did nothing until more than four years had elapsed. For this court to compel the reinstatement of the policy under such circumstances would be most inequitable.
Judgment for the defendant.