McFARLAND et al. *v.* FARM BUREAU MUTUAL AUTOMOBILE INSURANCE COMPANY
(Two Appeals in One Record)

[No. 47, October Term, 1952.]

242

*Decided January 8, 1953.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Ernest V. Wachs* for the appellants.

*E. Stuart Bushong* and *Irvine H. Rutledge,* with whom were *Byron M. Thompson* and *Lane, Bushong & Byron,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

To be answered in this appeal is whether or not an automobile liability insurance policy was in force at the time of the occurrence of an accident. The insured car was owned by Abraham Snyder Moore. While being driven by his son, Robert E. Moore, after the expiration date of the policy and with the premium unpaid, it collided with a car driven by Peter S. McFarland, one of the appellants, in which the other appellant, his wife, Lottie P. McFarland, was a passenger. Each recovered a judgment against Robert E. Moore for injuries sustained. After returns of *nulla bona* in efforts to execute on the judgments, the appellants caused writs of attachment to be laid in the hands of the Farm Bureau Mutual Automobile Insurance Company, the appellee, as a garnishee holding funds payable to or for the benefit of, Abraham Moore, the owner of the car, and Robert Moore, the driver, available to satisfy the judgments against the latter. Replications were filed to pleas of *nulla bona,* and on the issues so joined a Washington County jury was persuaded of the justice of the appellants' cause and found a verdict for each against the appellee in the amount of their respective judgments against Robert Moore. On motions seasonably made, the Court below entered judgments for the appellee, notwithstanding the verdicts, and the appeals are from these judgments.

The appellants base their right to reinstatement of the verdicts of the jury on a waiver by the insurance company of the policy requirement that the premium must be paid before the named expiration date lest the policy then expire automatically and finally. If waiver, or evidence of waiver sufficient to go to the jury, be found they say further that a second and final notice of unpaid premium sent by the company to the insured which states that the policy expires 17 days from due date if the premium is not paid is a conditional notice of intended cancellation which required further

action by the company before the policy is terminated, even though the premium be not paid.

The field of insurance is one in which the familiar principle of waiver is commonly applied. It does not help the appellants here because they could not build the factual platform from which to use it. Their lack is of fact, not law. Appellants, who sue on a policy indemnifying Abraham Moore against claims for damages, stand in his shoes and, like him, are chargeable with any breach of condition as well as failure of proof of facts on which liability depends. *Indemnity Insurance Co. of North America v. Smith*, 197 Md. 160, 165, 78 A. 2d 461, 463. On June 23, 1947, Moore took out an automobile insurance policy with the Farm Bureau Company which, by its terms, provided that it was in effect from June 23, 1947 to December 23, 1947 at 12.01 A.M. and "for such terms of six calendar months each thereafter as the required renewal premium is paid by the insured on or before the expiration of the current term and accepted by the Company". The policy terms as to notice of the premium due date are:

"* * * prior to the expiration of the term for which a premium has been paid and accepted by the Company, a notice of the premium required to renew or maintain this policy in effect will be mailed to the named insured, at the address stated in this policy."

There was no provision in the policy for a grace period but there was unchallenged testimony by a district manager of the appellee that it, as an established and uniform practice, gave a grace period the effect of which was to extend the "current term", and the time during which the renewal premium could be paid, for seventeen days. The policy contained the usual clause that "notice to any agent or knowledge possessed by any agent or by any other person shall not affect a waiver or change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except

by endorsement issued to form a part of this policy, signed by the President, a Vice-President, Secretary or Assistant Secretary, and countersigned by a duly Authorized Representative."

Appellants say that the circumstances under which Abraham Moore took out the policy and the manner and time of the payment of the several premiums by him are evidences of waiver of the policy terms sufficient to go to the jury. Moore is a farmer living in the Clear Springs section of Washington County. One Schamel, who died before the trial, was a salesman of extracts who, as he made his way around the county selling his wares, also sold insurance for the appellee. On June 23, 1947, he sold Moore the policy here in controversy; presumably the first premium was then paid. Moore says that Schamel told him he would collect the renewal premiums when he visited the farm on his extract selling tours of the county. Appellants argue that Moore gave testimony that the agent said he would "take care of" the insurance and suggest that the effect of this is that he was led to believe his insurance would remain in force whether he paid the premium on time or not. The fact is that the only definite statement of Moore, as opposed to generalizations or characterizations susceptible of various but all vague meanings, was that as a result of his dealings with Schamel he was led to believe that "when I made the payments he said I was taken care of." Moore also testified that he knew of the seventeen day grace period.

Moore paid the renewal premium on several occasions. Each time he paid Schamel and later received a receipt from the Company sent from its office in Columbus, Ohio.

The first renewal was due December 23, 1947. The Company receipt was dated January 14, 1948, five days after the end of the seventeen day grace period. The second renewal premium was due June 23, 1948. The Company receipt was dated July 12, two days after the end of the grace period. The third renewal date

was December 23, 1948, and the official receipt was dated December 28, 1948. Moore testified that it took three or four days after the payment to Schamel to get back the receipts. Mrs. Schamel said that her husband usually sent in his collections to the home office twice a week. If remittances were received at the home office after two thirty in the afternoon, they became part of the next day's mail and receipts for them were so dated. Schamel, as was true of all agents, gave a receipt for premium payments unless a check were given. Both sides were in full agreement at the trial, as they are here, that payment to Schamel was payment to the Company so that the time he was paid is decisive.

Moore could not or would not produce either check or receipt showing when he paid Schamel. On Moore's testimony there can be at most only a speculative possibility that one payment was made to Schamel after the grace period.

The fourth and final premium was due June 23, 1949. The grace period extended the due date to July 10th. The premium was not paid and on July 17th the accident happened. On the 18th Moore went to Schamel's home to get Schamel to accept a premium. He gave him a check dated July 18th. Schamel took it and first gave Moore a receipt dated the 16th, and then took it back and had Moore fill out an application for new insurance dated July 18th, the insurance to be effective July 18th. Later the Company refused the new insurance and returned the premium.

Asked whether he knew the policy had expired before the accident Moore said: "I knew the premium was not paid, I was not sure how much it was over lapsed or over due. * * * I thought maybe five, six or seven days, something like that." He was then asked if he knew that the grace period had expired. His answer was "I knew there was a grace period but did not think it was over due only a couple days."

The testimony of appellee was that, as provided in the policy, a notice of premium due was always mailed

twenty days before the due date. If the premium is not paid, a second notice is mailed—seven days after the due date. This is a duplicate of the premium notice with the addition on the bottom in red: "The policy expires 17· days from due date if premium is not paid." Moore did not deny receipt of these notices; in fact, admitted receipt of them in relation to the premium due June 23, 1949, just preceding the accident. Clearly he knew of the grace period and its length and effect.

The appellee's district manager testified that the date the local agent received the premium controlled—if within the grace period the policy was in force, if beyond it an application for new insurance must be issued and executed. He testified further with corroboration that Moore, before the accident, had become incensed with the Farm Bureau over an accident in which his daughter was involved, had cursed it and said he would no longer keep his insurance with it. Moore denied this but admitted he was displeased with the appellee.

These are facts and the background which appellants say entitle them to the help of the rule of waiver. The courts have uniformly held that where an insurance company adopts a course of conduct which induces an honest belief, reasonably founded in the mind of the insured that strict compliance with policy provisions will not be required and that payment may be delayed without incurring a forfeiture, and the insured is misled, the company will be deemed to have waived the right to claim an automatic forfeiture and will be estopped to elect to discontinue the insurance. 3 *Couch* on *Insurance,* 681; *Maryland Fire Insurance Co. v. Gusdorf,* 43 Md. 506; *Crook v. New York Life Insurance Co.,* 112 Md. 268, 75 A. 388.

In deciding whether appellants are right, all evidence favorable to them and all inferences fairly and reasonably deducible from that evidence must be taken as true. However, there is very little, if any, dispute as to the material facts which do not meet the tests demanded by the waiver rule. If Schamel intended to

do more than to indicate that he would be available from time to time for the payments of premiums and that payment to him was payment to the company,— which we do not find—his assurances to the extent they attempted to vary the written terms of the policy would have been unavailing.  A parol agreement made at the time of issuing the policy, contradicting the terms of the policy itself, like any other parol agreement inconsistent with a written agreement made contemporaneously therewith, is void and cannot be set up to contradict the writing.  *Lycoming Fire Insurance Co. v. Langley*, 62 Md. 196; *Williams v. New York Life Insurance Co.*, 122 Md. 141, 147, 89 A. 97; *Thompson v. Insurance Co.*, 104 U. S. 252, 26 L. Ed. 765; and 3 *Couch, supra*, sec. 679.  See also 13 *Appelman on Insurance*, sec. 7645.  Compare the principle applied in *Bitting v. Home Insurance Co.*, 161 Md. 56, 61, 155 A. 329, and referred to in *Eureka-Maryland Assurance Corp. v. Samuel*, 191 Md. 603, 610, 62 A. 2d 622, that provisions in a policy which deny the agent the power to waive any of its conditions have no application to acts done or statements made at the inception, and impose no limitation on agent's authority to bind his principal by representations material to the negotiation of the policy made before the issuance.

If a course of conduct by the company in accepting premiums late is relied on, the effort must fail.  The most appellants have shown is a *possibility* that one premium was paid late.  This is not enough—would not be enough if they had proved as a fact the late acceptance of that premium.  Where custom is relied on, the proof must show a uniform course of dealing and not an occasional or isolated instance.  15 *Appleman on Insurance*, sec. 8563, *Richards on Insurance Law*, 3rd Ed., sec. 139, *Sugarman v. Equitable Life Assurance Society*, 7 N. J. Super. 379, 71 A. 2d 148, at 150 (Superior Court of New Jersey, Chancery Division), affirmed by the Supreme Court of New Jersey, 5 N. J. 382, 75 A. 2d 822.

In any event, Moore did not have reasonable grounds to believe his insurance would be continued after July 10, 1949 unless he paid the premium. He admits receipt of the premium notice before then, telling him plainly that the policy would expire if he did not pay. Whatever had gone before, the Company at that point waved at him a red flag which said "beyond here you proceed at your own risk". It is admitted that Moore knew of the seventeen day grace period, and that it expired on July 10, 1949. With this knowledge, he did not heed the clear warning of the company. It is likewise clear that, on July 18th, when he came to see Schamel, he knew the grace period had expired "five, six or seven" days before. His conduct and his admissions make it plain that he knew his old policy had expired, and that he was not covered, and had not expected he would be.

The appellant's position is not strengthened by the fact that Schamel, the agent of the appellee, took a check for the amount of the premium dated July 18th and had Moore execute an application for new insurance. This is in accord with the appellee's testimony that this was the standard practice when a premium was not received before the expiration date of the policy. Maryland decisions show clearly that where the authority of the agent does not extend to the making of a new contract of insurance, he cannot, by accepting the premium after a forfeiture, waive the forfeiture and renew the policy. *North American Accident Insurance Co. v. Plummer*, 167 Md. 670, 176 A. 466; *Crook v. New York Life Insurance Co., supra*. Moreover, Moore cannot be heard to say that he did not know or understand the contents of the application for new insurance which showed plainly what it was and when the new coverage began, *Ray v. Eurice Bros.*, 201 Md. 115, 93 A. 2d 272; and he is bound by its provisions. *Eureka-Maryland-Assurance Corp. v. Samuel, supra*.

Since there was no evidence from which the jury could reasonably have found waiver beyond the seventeen

day grace period which the uniform practice of the appellee, known and understood by Moore, made a part of the policy terms, the appellants' second contention becomes immaterial. This is their point that the second premium notice was a conditional warning of intention to cancel in the future, which required further action by the company before the policy was rescinded. If it be said that the obvious waiver by appellee of the necessity to pay by the anniversary date of the policy (without regard to the seventeen day extension given as a matter of grace) requires an answer to this second contention, the result is the same. Without a policy provision requiring a notice by the insurer of the date of the premium, the obligation is on the insured to pay without notice. *Mutual Fire Insurance Co. v. Miller Lodge,* 58 Md. 463 at page 474. This case cites *Thompson v. Insurance Co.,* 104 U. S. 252, 26 L. Ed. 765, *supra,* as holding that the company is under no obligation to give notice of the time premium is due and "assumes no responsibility by giving it. The duty of the assured to pay at the day is the same, whether notice be given or not." See also *Bradley v. Potomac Fire Insurance Co.,* 32 Md. 108; *Knickerbocker Ins. Co. v. Dietz,* 52 Md. 16, and *North American Accident Insurance Co. v. Plummer,* supra.

By virtue of the policy provision, the appellee was required to give the first premium notice sent twenty days before the due date of the premium. Having thus met its written contractual obligation, the company could have rested, without acting further, and if the insured did not pay, the policy by virtue of its own terms would have expired. 3 *Couch, supra,* sec. 630; *North American Accident Insurance Co. v. Plummer, Knickerbocker Insurance Co. v. Dietz, supra.* The fact that the company gave notice of a voluntary and explicitly limited extension of seventeen days before the policy would expire does not lessen the obligation of the insured to pay within the extended period, nor is it evidence of anything more than it expressly states itself

to be, namely, an extension of seventeen days for payment in the absence of which the self-executing expiration of policy takes place.

Appellants rely upon *American Fire Insurance Co. v. Brooks,* 83 Md. 22, 34 A. 373, and *German Union Fire Insurance Co. v. Clarke Co.,* 116 Md. 622, 82 A. 2d 974, 39 L. R. A., N. S., 829. In those cases the court found a mere notice of a desire or intention to cancel hereafter and said there must be a present purpose, not a mere intent of future action. In *Seaboard Mutual Casualty Co. v. Profit,* (C. C. A. 4) 108 Fed. 2d 597, 598 A. L. R. 1105, where the assured was advised in writing that the policy "is hereby cancelled * * * such cancellation to take effect on the second day of May, 1938 at 12:01 A.M. standard time", Judge Soper, for the court, distinguished the *Brooks* and *Clarke Co.* cases, saying of them, "* * * it seems more accurate to say that they merely hold that all prospective notices are nugatory until followed by some clear act of cancellation." He added that, in the pending case "the notice was immediate and no further act of cancellation remained to be performed." We think that there is no difference in effect between the notice in the *Profit* case of immediate cancellation at a named effective time, and the notice in the instant case that unless the premium were paid the policy without more or other action "would expire".

We find the action of the court below in entering the judgment for the defendant, the appellee here, notwithstanding the verdict of the jury, to have been right.

*Judgment affirmed, with costs.*