ORIOLE PAPER BOX CO., Inc., a body corporate, and Ellsworth H. Steinberg

v.

RELIANCE INSURANCE COMPANY of Philadelphia, a body corporate of Pennsylvania, Pearl Assurance Company, Limited, a body corporate, Ohio Farmers Insurance Company, a body corporate, and John C. Danaher, Inc., a body corporate.

Civ. No. 9363.

United States District Court,
D. Maryland.
June 21, 1957.

Joseph B. Axelman and Ellsworth H. Steinberg, Baltimore, Md., for plaintiff.

Markell, Veazey & Gans, Baltimore, Md., Charles Markell, Jr., Baltimore, Md., for defendants.

R. DORSEY WATKINS, District Judge.

This suit by Oriole Paper Box Company, Inc., (Oriole) and Ellsworth H. Steinberg, against Reliance Insurance Company of Philadelphia (Reliance), Pearl Assurance Company, Ltd. (Pearl), Ohio Farmers Insurance Co. (Ohio) and John C. Danaher & Co., Inc. (Danaher)

was originally brought in the Superior Court of Baltimore City. The declaration in four counts claimed the face amount of three policies issued by Reliance, Pearl and Ohio in favor of Oriole as owner and Steinberg, as mortgagee, of certain personal property.

The declaration alleged that on November 2, 1954 each of the insurance companies issued five-year standard fire insurance policies on the goods, wares, chattels, stock in trade and fixtures contained in the premises known as Nos. 519–525 W. Pratt Street, Baltimore, Maryland, against the perils of loss by fire.[1]

It is further alleged that on or about April 23, 1956 written request was made to Danaher, General Agent of each of the insurance companies, that the policies then in force should "bind" at Oriole's new location, Nos. 749–755 W. Pratt Street, Baltimore, Maryland; that no denial of the request was made and that Oriole understood by lack of response that the request had been granted. On October 2, 1956 fire occurred at Nos. 749–755 W. Pratt Street seriously damaging or destroying Oriole's goods, wares, chattels, stock in trade and fixtures contained in said building; that Oriole gave notice thereof, offered to furnish appropriate proofs of loss and made demands upon each of the companies for payment of the amount of loss sustained; but that each company has refused and still refuses to pay.

In addition, the fourth count, which was against defendant Danaher alone, claimed that under the circumstances above set forth and because of the failure of Danaher "to endorse the aforementioned binder" Danaher was personally liable for the losses.[2]

The case was removed to this court purportedly pursuant to the provisions of Section 1441(c) of Title 28 U.S.C. which reads as follows:

"(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

After the case had been set for trial, the court called to the attention of counsel the fact that the plaintiffs were residents of Maryland, Reliance was incorporated under the laws of the Commonwealth of Pennsylvania, Pearl was incorporated under the laws of a foreign country, Ohio was incorporated under the laws of the State of Ohio, and Danaher was incorporated under the laws of Maryland, and that it appeared to the court that under the holdings in American Fire & Casualty Co. v. Finn, 1951, 341 U.S. 6, 12–14, 71 S.Ct. 534, 95 L.Ed. 702, and Board of Education of Marlboro Township v. Hartford Fire Ins. Co., D.C.D.N.J.1952, 105 F.Supp. 697, the case had been improperly removed since the claim against Danaher was not "a separate and independent claim or cause of action" within the meaning of Section 1441(c).

When the case was called for trial counsel for plaintiffs moved in open court to dismiss Danaher as a party defendant, without prejudice, to which counsel for defendants consented and an order to that effect was entered.[3] This procedure would appear to have met the

---

1. The policies also contained extended coverage and sprinkler loss provisions not here involved.

2. The total of the policies is $40,000, but the claim against Danaher was for $50,-000.

3. The court suggested that the parties agree that the case be treated as if it

had been remanded to the State court; that the declaration had been there amended by striking out the fourth count embodying the claim against Danaher and by striking Danaher as a defendant, and as so amended had been removed to this court. Counsel for plaintiffs and defendants acquiesced in this suggestion and so agreed.

suggestion or implication of the court in the Finn case, supra, 341 U.S. at pages 17–18, 71 S.Ct. at pages 541, 542, and the subsequent procedure in that case after remand. Finn v. American Fire & Casualty Co., 5 Cir., 1953, 207 F.2d 113, certiorari denied 1954, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069.

### Facts.

Shortly before November 2, 1954 Oriole notified its insurance broker, Green & Company, insurance brokers and agents of Philadelphia, Pennsylvania, that Oriole desired fire coverage on the contents of Nos. 519–25 W.Pratt St., Baltimore, Maryland. A representative of Green communicated with Danaher, General Agents, Baltimore, Maryland, of Reliance, Pearl and Ohio. Danaher primarily writes individual risks and was unwilling to assume full responsibility for a commercial risk such as this. Danaher communicated with its principals by telephone and after receiving their acceptances of the risk, issued a written binder, probably the same day, which was sent to Green. In due course the customary forms of policies, dated November 2, 1954, were issued by Danaher and sent to Green. The first and second year premiums were paid on these policies.

The property at 519–25 W. Pratt St. had sprinkler protection. The annual rate of premium was 36¢ per $100.

In April 1956 Oriole proposed to move to 749–755 W. Pratt St., in Baltimore. Oriole notified Green, and a representative of Green came to Baltimore and examined the new premises before the move was begun. The move took place between April 10–20, 1956 during which time some of the property covered by the November 2, 1954 policies was physically at both locations. On April 23, 1956, the move apparently having been completed by that date, Oriole telephoned Green and asked to have the policies bind the new location. On the same day Green sent a longhand request on Green's memorandum form, to Danaher referring to the three outstanding policies, naming Oriole as the assured, the effective date as April 23, 1956 and under the heading of "Coverage" inserted the following: "Please bind new location 749–55 West Pratt St. Baltimore, Md." Green did not request a written binder of Danaher and did not further communicate with Danaher or receive any communication from Danaher until after the fire which destroyed the contents of 749–55 W. Pratt St. on October 2, 1956.

The new location had no sprinkler protection and in April 1956 no rating with respect to premiums had been officially made. On July 10, 1956 an application was made by Green through its Baltimore representative (who is not Danaher) to the Fire Underwriting Bureau to fix a rate on 749–55 W. Pratt St. The rate was promulgated August 1, 1956, effective July 9, 1956 and was at the rate of $2.64 per $100 annually. At the same time recommendations were prepared by the Bureau with respect to steps that might be taken by Oriole and other occupants of 749–755 W. Pratt St. which would result in a reduction of the $2.64 rate. Just what would have been the amount of the reduction was not established by the testimony but the reduction would not have been greater than 50%. Green notified Oriole of the new rate and of the recommendations on or about August 8, 1956. The testimony indicates that the recommendations were carried out and that several days before the fire, the Rating Bureau had been so notified but no inspection as to compliance had been made prior to the fire.

Danaher received no notice of or copy of the application for rating or of the recommendations. There was, however, inserted by the Rating Bureau in Danaher's card files a card showing the $2.64 rate. I specifically find as a fact that Danaher had no actual knowledge of this rate until after the fire.

During the course of the fire on October 2, 1956 Oriole telephoned Green and a representative was immediately sent from Philadelphia to Baltimore, arriving before the fire had been extinguished. That evening he telephoned Edward Dan-

aher, president of the Danaher Company, at his home and reported the fire. Danaher said that when he had received a report of the fire, he "pulled the file" on Oriole and found Green's memorandum of April 23, 1956. Green's representative testified that in the course of the conversation he said that they should now get endorsements on the policies and that Danaher replied "Yes. I found the binder in the file; I do not know why the policies were not endorsed but I will make up endorsements tomorrow." The latter conversation is flatly denied by Danaher.

On page one of each policy, it is stated that each insured Oriole "at location of property involved," against all direct fire loss "to the property described hereinafter while located or contained as described in this policy", and under column 4 "Description and location of property covered. Show construction, type of roof and occupancy of building(s) covered or containing the property covered * * *" the following appears:

"Coverage B & C— / Brick approved roof building occupied by assured as Mfg. cardboard boxes, and by others for purposes not more hazardous than Mfg. of men's clothing located 519–25; 527; 529; rear 529; 531–535 W. Pratt St.; 414–432 Light St and 16–34 E. Barre St thru to S. Charles Street, Baltimore, Maryland."

Each of the policies in suit refers to the coverage as follows:

"Coverage B: Contents Other Than Stock—Being furniture, fixtures, machinery, equipment and other personal property of every description (except as otherwise excluded) while contained in, on or attached to the building(s) and additions described on the first page of this policy.

"Coverage C: Stock—Where the term 'Stock' is used it shall be understood to include stock, materials and supplies, including packages for or containing the same, usual or in-cidental to the business of the insured, while contained in, on or attached to the building(s) and additions described on the first page of this policy, except as otherwise excluded."

Each also contains the following language with respect to "Added provisions":

"The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change."

Each likewise contains the following provisions:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring

"(a) While the hazard is increased by any means within the control or knowledge of the insured;"

Each also contains the following language after the caption "Waiver provisions":

"No permission affecting this insurance shall exist, or waiver or any provision be valid, unless granted herein or expressed in writing added hereto."

The parties are in agreement that the property stated to be covered at 519–25 W. Pratt St. and actually located at the time of the fire at 749–55 W. Pratt St., was destroyed by fire and that if the defendants are liable, they are liable for the full face amounts of their policies. It is, however, the contention of the defendants that the coverage was restricted to the premises 519–25 W. Pratt St.; that the move to 749–55 W. Pratt St. was a material increase in the hazard within

the knowledge of the insured and that there had been no written endorsement waiving any provisions of the policies. I specifically find by the weight of the credible evidence that the binder application sent by Green under date of April 23, 1956 to Danaher was received on or about the following day by Danaher; but I further find that Danaher had no conscious awareness of the existence of this paper until after the fire had occurred on October 2, 1956.[4] Oriole admits that Green & Company was its agent and that all particulars with respect to insurance were left to Green; that Oriole received the policies in question from Green and was not asked at any time to produce or return them; and that Oriole never asked for a written binder on the new location or whether or not a written binder was necessary, relying upon Green to do whatever was necessary for coverage. Oriole at no time prior to the fire had any direct communication with Danaher or with Reliance, Pearl or Ohio.

In substance the contention of Green on behalf of Oriole is that the receipt by Danaher of the binder request and the failure of Danaher to notify Green of a rejection of the request bound Reliance, Pearl and Ohio at the new location despite the fact that no written waiver or endorsement was made. In support of this position Green, by its own testimony and by the testimony of a Baltimore insurance general agent and broker, endeavored to establish a custom in the Philadelphia-Baltimore areas to the effect that failure to notify of the rejection of an application for new insurance or for endorsement on an old policy was the equivalent of a binder; that binders may be oral and while ordinarily an oral binder would not be continued beyond 30–60 days, in the case of a binder where no rate was established it could be continued until the new rate was determined and if there were recommendations by which the rate could be reduced, until such recommendations had been met, even although this might result in an outstanding oral binder for a period of 6 to 8 months. On the other hand, the testimony on behalf of Reliance, Pearl and Ohio through Danaher and through the managers of the fire insurance departments of two of the largest Baltimore agencies [5] contradicted the existence of such a custom. I therefore find that the custom for which Oriole contends has not been established by the weight of the credible evidence and that if recovery is to be allowed, it must be based upon the facts in the particular case and their relationship to the Maryland decisions construing policy conditions with respect to the requirement of written endorsements.

Oriole contends that under applicable principles of law, the defendants through Danaher having been notified of the removal of the insured property to its new location, were obligated either to consent to the removal, or to cancel the policies and return the unearned premiums [6]; and that the failure to do so prior to the fire estops the defendants from denying that they consented to the removal. Oriole further contends that it is no defense that the new location called for a higher premium rate, or that defendants' inaction was attributable not to deliberation but to the negligence of

---

4. The Danaher office is a small one, consisting of uncle, nephew and one secretary-file clerk. Ordinarily, mail is opened by one of the Danahers and is filed by the file clerk. All three testified to lack of any recollection of having seen the binder request at any time prior to the fire. I accept this testimony as accurate both from my impression of the witnesses on the stand and from the inherent improbability that Danaher would, had it

been aware of the binder, have failed to take some action to endeavor to place the new coverage, particularly at what would obviously have been higher premium rates.

5. One had held responsible positions in fire insurance departments in Philadelphia from 1928, to 1945, and in Baltimore since 1945.

6. Although no tender of the increased premiums had or has been made by plaintiff.

Danaher; and that the express provision against waiver except as "expressed in writing added" to the policy is not controlling. In support of these contentions Oriole cites, among others, Maryland Fire Ins. Co. v. Gusdorf, 1876, 43 Md. 506; 45 C.J.S. Insurance § 560, p. 318; 29 Am.Jur. Insurance, Sec. 799, p. 604; Annotations, 4 A.L.R.2d 870 et seq.; 33 A.L.R.2d 642 et seq.

■ In a diversity case such as this, Maryland law is of course controlling. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188; Schumacher & Siller, Inc., v. Sandler, 4 Cir., 1941, 118 F.2d 348, 349. Oriole cites the Gusdorf case, supra, as decisive in its favor. In that case the insurance had been effected by the plaintiff himself by negotiations with the president of the company, who issued the policy. Some time previous to the removal of the goods plaintiff went to the company's office, there saw the president, and notified him that plaintiff desired to move the goods into an adjoining brick building of the same character, and wished to know if there would be any objection to this. The policy contained a provision that "anything less than a distinct agreement endorsed on this policy shall not be construed as a waiver of any written or printed condition, restriction, or stipulation herein contained." The balance of the conduct of the parties, and its effect as an estoppel, are sufficiently summarized in the following quotations from the court's opinion (43 Md. at pages 514–516):

" * * * The assured before removing his goods, applied in person to the president of the company, and asked him if there was any objection, that is, would the removal affect the continuance of the insurance upon them? He was informed by the president, who knew of the absence of the policy at the time, that it was no matter, that he would fix it all right, and that he need not bring the policy, that is, he said to the assured, in effect go on and re-move your goods, you need not bring your policy, and have the permission to do so, endorsed on it, the insurance shall continue in force without such endorsement. The assured departs and removes his goods, relying upon the statements and assurance thus made and given to him. By so acting, he did that which prejudiced his interest under the policy. He thereby gave the company the advantage of retaining the premium without further continuance of the risk, and also the advantage of setting up this defense against their liability after the loss had occurred. Would not the success of this defense operate a fraud upon the assured? We think it clear the company ought to be, and are estopped from making it * * *.

"In all the cases in which this doctrine has been applied, the companies have been held bound by the acts and declarations of their officers and agents. No difficulty has arisen in any of them, as to the authority of such agents in this respect, and we entertain none in this case. The terms of this policy are not more stringent in this particular, than in that in [National Fire] Ins. Co. v. Crane [16 Md. 260], and others cited by the appellee's counsel in his brief. Unquestionably, the president was a proper party to apply to, in order to have the endorsement made on the policy according to its terms, and his endorsement and signing of the agreement, giving permission to remove the goods, would without doubt, have bound the company. That being so, we see no reason why his declarations and acts, when applied to on the subject, dispensing with the endorsement, and inducing the assured to act without it to his prejudice, should not bind the company equally as if he had issued the policy by dispensing, in the same manner, with some of the conditions, compliance with

which was by its terms made essential to its becoming a valid contract.

"Nor is there any express and controlling decision in this State, that compels relief in such a case to be sought in a Court of Equity. The cases on this point referred to by the appellants' counsel, are merely to the effect that a written instrument can be *reformed in equity only,* where by mistake or accident, it has failed to express the contract which the parties actually made, and that parol proof is inadmissible *at law,* to accomplish that result. This is the extent to which our own decisions have gone. They have carefully left open the question which this case presents."

There are certain distinctions between the facts in this case and in the Gusdorf one. There, knowledge of the proposed removal was brought home to the defendant company; there was an offer to produce the policy; there was every indication that the risk was not increased; and there was the express assurance, on which plaintiff relied, that an endorsement was not necessary. Here, there was notice rather than knowledge; the risk was materially increased, as shown by the $2.64 rate compared with the old one of $0.36; and the change in location was not made in reliance upon any assurance that no endorsement of the policies was necessary, for the moving had begun nearly two weeks before, and had been completed before, the binder request of April 23, 1956. However, the quoted language from the opinion in the Gusdorf case does recognize that even express requirements of written endorsements may be overcome.

In National Union Fire Ins. Co. v. Menke, 1934, 166 Md. 513, 171 A. 719, the Maryland Court of Appeals expressly held that actual knowledge by an agent of, and apparently even his participation in, breach of the terms of an issued policy, would not cross-cut the requirement that any alteration of the policy provisions must be written. In that case

plaintiff obtained through Gonder, an agent of defendant, a fire policy on his dwelling house and the chattels contained therein. The policy provided that it should be void "while the insured shall have any other contract of insurance, whether valid or not, upon such property, not permitted in writing hereon." Later plaintiff obtained from other companies additional policies on the same property. No written consent of defendant was obtained. Still later the property was destroyed by fire. Defendant defended on the ground of violation of the clause prohibiting other insurance. Over objection of defendant, evidence was admitted that the additional policies had been obtained for plaintiff at the request of Gonder. The trial court held that this constituted a waiver of the other insurance provision, despite the policy provision that "no officer, agent or other representative of this Company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto; and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The jury found for the plaintiff. The Maryland Court of Appeals held that evidence of knowledge by defendant's agent of the new policies did not alter the requirement of the policy as to written consents; that testimony as to such knowledge had therefore been improperly admitted; and reversed the judgment without a new trial. The court said, (166 Md. at pages 517–518, 519; 171 A. at pages 721, 722):

"The effect of the stipulation as to those policies is simply to indicate that, as Mr. Gonder requested their issuance, he necessarily was aware that insurance was being obtained

by the plaintiff in addition to that which the policy issued by the defendant provided. But, if it be assumed that such a knowledge was imputable to Mr. Gonder in his capacity of agent for the defendant, it could not affect the binding force of the contract which the previously issued policy of the defendant expressed. The only permitted method of waiving any of the policy conditions, after its issuance, was by an indorsed or attached agreement to that effect. The right of the agent to waive its operative provisions in any other way was expressly denied.

\* \* \* \* \* \*

" \* \* \* According to the decisions of this court, the power of the agent to waive provisions of the policy, after its delivery to the insured, are effectually limited by such terms as the present policy contains, and the agent's knowledge of subsequent disregard by the insured of specific conditions of the policy does not result in a waiver which is explicitly precluded except by agreement duly indorsed or attached. The application of those principles to the case now under consideration leads us to the conclusion that there was error in the admission of the testimony that the defendant's agent aided the plaintiff in procuring additional insurance in contravention of the policy now in litigation, and that the prayer to direct a verdict for the defendant because of uncontradicted evidence of such a breach of the contract embodied in the policy should have been granted."

Defendants also rely upon Goeller v. St. Paul Fire and Marine Insurance Company, a decision by Judge Tucker of the Supreme Bench of Baltimore City in December 1953. The case, filed in the Baltimore City Court, is quite closely in point, involving the interpretation of provisions identical with those of the policies in suit, and with removal of property without written endorsement. The only substantial differences factually are that in the Goeller case the plaintiff orally advised defendant's agent of his intention to relocate the property, that the agent replied that "he would take care of it", and that thereafter the property was moved and the loss occurred. Judge Tucker, relying primarily upon the Menke [7] case, supra, and particularly the holding therein that "the only permitted method of waiving any of the policy conditions, after its issuance, was by an indorsed or attached agreement to that effect", (166 Md. at page 518, 171 A. at page 721), withdrew the case from the jury at the close of plaintiff's case, and in a written memorandum denied plaintiff's motion for a new trial.

■ While Judge Tucker's opinion, being that of a nisi prius and not an appellate court, is not binding upon me (King v. Order of United Commercial Travelers of America, 1948, 333 U.S. 153, 161, 68 S.Ct. 488, 92 L.Ed. 608; Roland Electric Co. v. Black, 4 Cir., 1947, 163 F.2d 417, 423, 6 A.L.R.2d 82; 1949, Erie R. Co. v. Tompkins in Retrospect; an Analysis of its Proper Area and Limits, 35 Am.Bar Ass'n Journal 19, 22, by Chief Judge John J. Parker), it is entitled to great respect. It impresses me as a logical forecast of what the Maryland Court of Appeals would probably rule on facts similar to those in the instant case.

I am further influenced to hold effective the policy conditions requiring changes in the policies to be in writing, by the decision of the New York Court of Appeals in Ray v. Canton Co-operative Fire Ins. Co., 1941, 286 N.Y. 405, 36 N.E.2d 639. In that case the owner

---

**7.** The Gusdorf case, supra, has been cited by the Maryland Court of Appeals eleven times, but is not mentioned in the Menke decision. The most recent citation of Gusdorf, supra, is in McFarland v. Farm Bureau Mutual Auto. Ins. Co., 1953, 201 Md. 241, 248, 93 A.2d 551, 555, with reference to waiver and estoppel. It was contended that previous acceptance of a late premium prevented the defendant from asserting forfeiture for nonpayment. The court held that "Where custom is relied on, the proof must show a uniform course of dealing and not an occasional or isolated instance" and affirmed a judgment for defendant.

of property had obtained a fire policy on oral application to a general agent of defendants who had "power to bind risks." She thereafter transferred the property to plaintiffs, and notified the general agent, who agreed to make the transfer. He was also notified by plaintiffs by registered mail of the change in ownership. Before any endorsement was made, the fire occurred, and defendants defended on the ground that the policy was void because no rider had been executed. The trial court submitted issues of waiver and estoppel to the jury, which found against the defendants. The trial court denied motions of non-suit and for a new trial. Sup.1940, 18 N.Y.S.2d 671. The Appellate Division, Third Department, unanimously affirmed. 1940, 260 App.Div. 961, 23 N.Y.S.2d 329. The Appellate Division, Fourth Department, unanimously denied reargument and deied leave to appeal. 1941, 261 App.Div. 864, 25 N.Y.S.2d 1014. The Court of Appeals unanimously reversed these decisions in a per curiam opinion. The ground of decision, relevant here, was that (36 N.E.2d at page 640):

> "Since the policy in suit was at the time in question in the exclusive possession of the plaintiffs, the defendant companies were not bound by the promise of any of their agents that consent to an assignment thereof to the plaintiffs would be indorsed thereon * * *."

The court then cited in support of its decision the case of Truglio v. Zurich General Accident & Liability Ins. Co., 1928, 247 N.Y. 423, 160 N.E. 774. In that case, after a sale had been made, the policy was returned to the issuing company with the request that the names of the purchasers be endorsed thereon.

Two days later, during which the company did nothing, the casualty insured against occurred. The Court of Appeals, reversing the trial court and appellate division, held that assent was not to be inferred, saying: "Contracts are not made so easily. The defendant was free to accept or to reject the new owners either with reason or without. Mere silence or inaction left the situation as it was", and concluded (160 N.E. at page 775):

> "The plaintiff makes some point about a usage on the part of insurance companies to accept all such applications provisionally and until notice of rejection. We pass over the question whether the usage could prevail in the face of the provisions of this policy. If valid, it has not been proved. When temporary insurance is intended, the practice of the companies is to sign a binder, with appropriate conditions. [Citation omitted.] If the risk is disapproved, the binder may be canceled. Here there was no binder and, therefore, no insurance."

■ As the policies in question are the New York standard forms, an interpretation by the New York Court of Appeals presumably would be "entitled to great weight and consideration." Fisher v. Dinneen, 1932, 161 Md. 605, 614, 158 A. 9, 12.

Conclusions of Law.

■ I am therefore of the opinion that under the facts in this case suit cannot successfully be maintained on the policies [8] for lack of the required written additions thereto; and that there has been no effective waiver [9] of, or estoppel to assert, such defense.

The amended complaint is dismissed.

---

8. The suit is on the policies. Before the case was concluded, the court suggested the possibilities of plaintiffs asking for a reformation of the policies, or bringing action on the theory that the binder application, and failure to reject, constituted new insurance (cf. Harp v. Grangers' Mut. Fire Ins. Co., 1878, 49 Md. 307, 309): neither of which was adopted or argued.

9. Although there is a distinction between waiver and estoppel, sometimes of controlling importance, in the field of insurance the terms are often used interchangeably. See Annotation, 4 A.L.R.2d 868, 870. In Gusdorf, supra, the emphasis is on estoppel; in Menke, supra, on waiver; and in McFarland, supra, note 7, the reference is to waiver and estoppel.