## BROWN v. LANG et al.

1. A surety who pays a debt for his principal, is entitled to stand in the place of the creditor as to all securities, funds, liens and equities, which he may have against other persons or property on account of the debt.

2. B. at the request of L. indorsed a note made by M. & L. as partners, which was discounted by a Bank; after the death of L. his administratrix and M. made a new note, for the purpose of continuing the indebtedness, which was also indorsed by B. and discounted by the Bank. This last note being unpaid, the Bank recovered a judgment against B. on his indorsement, which he satisfied, and filed his bill to charge the estate of M. upon the allegation that L. and the administratrix were insolvent.

HELD—1. That the purchase of the second note by the Bank, relieved the intestate's estate from all liability to pay the debt.

2. The complainant was not entitled to the relief sought, that his only equity so far as the intestate's estate was concerned, was to subject the interest of the administratrix and surviving partner therein, (if any,) to the payment of the amount paid as their indorser.

THE plaintiff in error filed his bill in the Court of Chancery holden at Mobile, setting forth that on the 18th March, 1837, at the request of Willis Lang, who was then a copartner in trade with Colin C. McRae, under the firm of McRae & Lang, he indorsed a promissory note, made by the concern, for twelve hundred and twenty-five dollars, which was duly discounted by the Bank of Mobile. Before the maturity of the note Lang died, and administration of his estate was granted to Catharine Lang, his widow, by the Orphans' Court of Mobile. To enable the administratrix to renew and continue the indebtedness to the Bank, so commenced by McRea & Lang, the complainant, at the request of Mrs. Lang, repeatedly indorsed the note of herself and McRae, and the note of McRae & Lang was thereby extinguished. The last renewed note indorsed by the plaintiff was dated the 9th May, 1838, and was due the 7th July thereafter; this note not being promptly paid by the makers, was put in suit, and judgment recovered thereon against McRae and Mrs. Lang, in her individual character, as also against the complainant.

It is further stated that the makers of the note were insolvent, and the plaintiff, to save his property from execution and sale, has fully paid off the judgment against him, together with

all interest and costs. Mrs. Lang, as administratrix, refuses to reimburse the sum thus paid, although the complainant first indorsed for, and at the request of, the intestate, and repeated his indorsement at her solicitation, to relieve his estate from a liability to execution.

The bill prays that the money paid by the complainant may be considered as a charge upon the intestate's estate, that the amount may be ascertained by a reference to the Master, and the administratrix be decreed to pay it; and in default of payment by her, that an execution issue against the estate of her intestate.

McRae and Mrs. Lang are both made defendants. The former answers that his deceased partner being under protest to the Bank of Mobile, as the indorser of one Collins, to relieve the credit of the firm, he united with him and made a note, which the complainant indorsed; this note was repeatedly renewed by this defendant and Mrs. Lang, (after the death of her husband,) as makers, and the complainant as indorser; and a judgment rendered upon the note last made has been paid by the complainant as an indorser.

Mrs. Lang demurred to the bill for want of equity, and answers that, not admitting her intestate had "any thing to do with the original note as set forth by the complainant, or had any benefit therefrom, or assented to the making thereof." She prays proof of all these facts, if they are material.

Upon the application of the complainant for a commission to take the deposition of McRae to be read against his co-defendant, interrogatories were filed and a commission issued accordingly. The testimony of McRae is substantially a reiteration of the facts stated in his answer.

The Chancellor was of opinion that the bill did not disclose a case for equitable interference, and consequently dismissed it at the complainant's costs. To revise this decree a writ of error has been prosecuted to this Court.

DARGAN, for the plaintiff in error. By the payment of the judgment recovered by the Bank, the plaintiff was substituted to all the rights to which the Bank was previously entitled. If the debt had been paid by the indorser without suit, the indorser would have been entitled to the note; and upon the

same principle, having paid it after judgment, he is authorized in equity to control the judgment against the makers. [1 Turner and Russ. Rep. 224; 8 Cond. Eng. Ch. Rep. 338, 344; 1 Law Lib. 150; 2 Vern. Rep. 608; 14 Ves. Rep. 162; 1 John. Ch. Rep. 413.]

The intestate was originally liable as a maker of the note to pay it, so as to relieve the plaintiff, and upon principles of natural justice, his estate is chargeable, as the renewed indorsement was intended to save it from execution and sale. The case of ————, [2 N. C. Ch. Rep. —,] very fully establishes this principle.

Mrs. Lang, as administratrix, gave her own note to pay intestate's debt, and thus became a creditor of the estate to that extent. The law is well settled that a trustee who advances his own money for the benefit of the trust, is entitled to be reimbursed from the trust funds; and it is not competent for a trustee to refuse to collect his debts, or to release them to the prejudice of his creditors. If a creditor is unable to obtain a satisfaction of a judgment by execution, he may resort to equity to subject a debt due to the defendant. [4 Rand. Rep. 394; 4 John. Ch. Rep. 313.]

CAMPBELL, for the defendant. Brown cannot claim on the note—that imposes an obligation on Mrs. Lang alone; in fact it was not competent for her to charge the estate by giving a personal security. [6 Mass. Rep. 158; 8 Mass. Rep. 199.]

If the plaintiff has any right to claim a reimbursement of his advances, it is by being subrogated to the situation of the Bank upon the original contract; but this cannot be, for the bill expressly charges that that contract " was extinguished" by a new note. The legal effect of a renewal of a note in Bank is entirely to satisfy the indebtedness upon the old paper. The discount is made upon the new note, and the amount placed to the credit of the borrower, while the Bank obliges him to settle the old note by the application of the money so lent. [2 Gill. and J. Rep. 494, 509.]

Brown cannot claim on the security we have seen, because, as we have shown, that has lost its vitality; and if subrogated to the rights of the bank, he cannot subject the estate of

the intestate to his reimbursement.  [8 Eng. Ch. Rep. 338; Foster v. The Athæneum, 3 Ala. Rep. 302.]

The fact that Mrs. Lang borrowed money to pay the debts of the estate, does not make the estate the debtor of the lender, and equity would not, if all the parties to the note had been insolvent, have sustained a bill at the suit of the Bank, as the creditor of Mrs. L. against the assets in her hands.  Chancery possibly would entertain a suit, such as the present, for a separation and settlement of the interest of the administratrix in her husband's estate.  But such is not the scope of the bill. The claim is set up on the isolated ground, that the debt which the plaintiff indorsed, in its inception, bound the estate of Willis Lang, and that it should be paid from its means, though, by the assent of all parties, its character has been entirely changed.   In this view, it is clear the equity of the bill cannot be sustained.   [8 Ves. Rep. 8.]

COLLIER, C. J.—The object of the plaintiff's bill is not to obtain an assignment of the judgment recovered by the Bank against McRae and Mrs. Lang.  If that judgment was distinct from the judgment rendered against the plaintiff, or was not satisfied by the payment of the latter, it would be entirely competent for Chancery to direct it to be transferred upon a bill exhibited with a view to such a result.  [Creager v. Bengle, 4 H. and John. Rep. 234; Watts v. Kinney, 3 Leigh. Rep. 272.] But the assumed equity of the bill is, that the plaintiff, as the indorser of Mrs. Lang, &c. has paid a note, which had been substituted for a note of her intestate, &c. on which he was also an indorser, and the makers of the note are unable to reimburse the amount paid.  It is not pretended that it is competent for an administrator to impose a direct liability upon the estate he represents, by executing a note or other security for money, in his representative character; but it is insisted, that as by the substitution of the note which the plaintiff has paid, the estate of the intestate has been relieved from a liability *pro tanto,* in equity and natural justice, it is bound to refund him the amount advanced.   It is a settled principle, that a surety who pays a debt is entitled to stand in the place of the creditor as to all securities, funds, liens and equities which he may have against other persons or property on account of the debt.

[1 Story's Eq. 477 *et post;* Hampton v. Levy, 1 McC. Ch. Rep. 112; Worthington v. Ferguson, 4 H. and John. Rep. 522; Tankersley v. Anderson, 4 Dess. Rep. 44; Miller v. Pendleton, 4 H. and Munf. Rep. 436.] And it is equally clear, if a creditor cannot obtain satisfaction of a judgment by execution he may resort to Chancery to subject a debt due to the defendant, or property to which he has an equitable title.

In the case before us, the Bank was the creditor to whom the debt was due and has been paid. The intestate of Mrs. Lang, together with his copartner, were originally debtors, but that indebtedness was fully paid by the discount of the substituted note and an appropriation of its proceeds; and the evidence of it, in the language of the bill, *was extinguished.*

This being the case, Mrs. Lang and McRae became the debtors; and it is a debt for the payment of which they alone were responsible, as makers of the note. There is nothing in the record from which it can be inferred that the Bank did not intend to discharge the intestate's estate from all liability to pay the note of which he was a joint maker; and we cannot, against the direct allegation of the bill, suppose that there was a continuing responsibility. The creditor then, could not have proceeded, either at law or in equity, to charge the estate of the intestate, in the hands of the administratrix; and the surety whose claim is deduced through the creditor, cannot look to any source of reimbursement of which the latter could not have availed himself.

The Bank does not appear to have had any other security for the debt due to it than the last note, which was indorsed and paid by the plaintiff; and the principles we have stated do not, under this aspect of the case, authorize him to seek a repayment save only from the parties who preceded him on the paper. If the judgment against the makers of the note was not discharged by the payment made by the plaintiff, then as we have already said, a transfer of that judgment might be enforced in equity. So the plaintiff might maintain an action at law, for money paid, &c. or if a reimbursement could not be obtained of either of the defendants at law, he might resort to equity, and there reach debts due to either of them, or subject other property to his indemnity.

It is certainly true, that by relieving the estate of her intes-

tate from the payment of the note made by him and McRae, Mrs. Lang, upon proof of the insolvency of the latter, was authorized to charge the estate with the amount of the substituted note; and that sum would. be allowed her on the settlement of her administration accounts. The plaintiff might, in equity, coerce a settlement of the intestate's estate, cause its division and distribution, and obtain a decree for the appropriation of the interest of both, or either, of the defendants to the extent of his advance. If, upon the settlement, nothing should appear to be due to the administratrix, although she may have wasted the estate, the plaintiff would not be entitled to recover anything: the more especially as the sureties in her administration bond, who are entitled to equal favor, would be answerable for her default. This conclusion is also enforced by the consideration that the intestate's estate was not the debtor of the plaintiff, but its administratrix was, and through her only as its creditor or distributee can it be resorted to.

From what we have said it is sufficiently shewn that the plaintiff cannot proceed against the estate of the intestate upon the ground that the intestate was originally liable; but his only ground of equity against it, is through either of the defendants as a creditor, or distributee. The bill was not framed with a view to such relief, but upon a hypothesis materially different, and, as we have seen, wholly untenable.

The subject matter of the bill not embracing what we have shown to be the equity of the plaintiff, the decree of dismissal will not bar a suit founded upon that equity, if it can be sustained by proof. [Story's Eq. Plead. 608.]

Our conclusion is, that the decree must be affirmed.