## JOHNSTON, Adm'r, v. BYARS STATE BANK.

No. 18935. Opinion Filed Jan. 21, 1930.

Rehearing Denied Feb. 18, 1930.

Commissioners' Opinion, Division No. 2.

Weaver & Weaver, for plaintiff in error.

Blanton, Osborn & Curtis, for defendant in error.

DIFFENDAFFER, C. This action was commenced in the district court of McClain county by defendant in error, hereinafter referred to as plaintiff, against plaintiff in error, and H. T. Johnston, hereinafter referred to as defendants, and has for its object the subjection of certain money alleged to be in the hands of defendant Edwin Johnston, as administrator of the estate of Jesse S. Johnston, deceased, and belonging to defendant H. T. Johnston, being his distributive share of the estate of said Jesse S. Johnston. The action is in the nature of a creditor's bill, and was brought, without judgment first having been obtained against the alleged principal debtor, Henry T. Johnston.

The record does not disclose just when the action was commenced, but it appears that plaintiff filed an amended petition on February 19, 1927, wherein, after certain formal allegations, it is alleged, in substance, that on January 16, 1924, defendant H. T. Johnston being indebted to plaintiff executed and delivered to plaintiff his promissory note of that date in the sum of $726.18, due October 1, 1924, with interest from maturity at 10 per cent.; that same though past due had not been paid, and that there was then due thereon the sum of $925; that defendant H. T. Johnston has and owns no property within the state of Oklahoma, other than his interest in said estate; that he is a nonresident of the state of Oklahoma and a resident of the state of Texas, his last known post office address being Amarillo, Tex.; that it is impossible to obtain a judgment against him in this state, except in so far as the same is a judgment in rem; that he has left the state of Oklahoma for the purpose of avoiding the payment of his debts and for the purpose of cheating and defrauding plaintiff and other creditors; that he is not possessed of any property in the state of Texas, with which to pay said indebtedness, and that a judgment against him there would be uncollectable; that he is hopelessly insolvent and unable to pay off and discharge his debts, and that he fails and refuses to apply any money or property he acquires to the payment of plaintiff's debt, or any other debt owing by him. It is then alleged that Jesse S. Johnston died a resident of McClain county, Okla., October 8, 1918, and that defendant Edwin Johnston is the duly appointed, qualified, and acting administrator of his estate; that as such he has in his hands $7,095 in money, and some personal property; that defendant H. T. Johnston is an heir at law of said Jesse T. Johnston and and will be entitled as such to receive some $800 or $900 after all debts and expenses of administration are paid; that defendant H. T. Johnston and Edwin Johnston and the other heirs threaten to pay out to H. T. Johnston his distributive share of said money, and thereby place it beyond the reach of plaintiff. It is then alleged that plaintiff has no adequate remedy at law, and that said money and estate are not subject to execution or garnishment, and can only be reached by proceedings in the nature of a creditor's bill, and unless it can be so reached, plaintiff will never be able to collect its debt. It is then alleged that said money and funds are not subject to garnishment at this time, in that there has been no order of distribution made in the settlement of said estate; that the time for presentation and allowance of claims against the estate of Jesse S. Johnston has expired and no claims have been filed, and that the estate is ready for distribution, an application for an order of distribution having been made and set for hearing March 7, 1927.

The prayer was for judgment against H. T. Johnston, for the principal sum alleged to be due on the note, together with interest,

attorneys' fee provided in the note, etc., and that pending the action, defendants H. T. Johnston and Edwin Johnston, as administrator, be enjoined from disposing of or otherwise incumbering the monies and personal property inherited by defendant H. T. Johnston, and that upon final settlement o said estate and order distributing the same, the administrator be directed to pay the money belonging to defendant H. T. Johnston to the court clerk, or to a receiver to be appointed by the court, to the end that same might be applied in satisfaction and discharge of plaintiff's judgment.

To this amended petition, defendant Edwin Johnston, administrator, filed his separate demurrer setting up three grounds:

(1) That the amended petition failed to state a cause of action against this defendant.

(2) The amended petition shows upon its face that it is an attempt to have the district court interfere with, direct, and control the county court and to usurp the jurisdiction and power of the probate jurisdiction of the county court, and

(3) The amended petition shows upon its face that the property sought to be reached is already in "legis custodia'; that is, in the hands of the county court of McClain county, and of this defendant, the duly constituted officer of the court and custodian of said property as the administrator of the estate of Jesse S. Johnston, deceased.

Service of summons by publication was had upon defendant H. T. Johnston. He did not appear and has never appeared and objected in any manner to the attempt to thus subject his distributive share of the estate of Jesse S. Johnston to the payment of his alleged indebtedness to plaintiff.

No order appears to have been made upon the amended petition until June 8, 1927, at which time plaintiff filed what it termed a supplemental amendment to petition, wherein it was alleged that since the institution of this action a final order of distribution had been made by the county court, wherein the county court ordered and decreed that the administrator pay and deliver to defendant H. T. Johnston the sum of $871 as his portion of said estate, and that the same is and was then in the hands of said administrator. Thereupon plaintiff, by its attorney, and defendant Edwin Johnston, administrator, in person and by his attorney, appeared in the district court, and the demurrer to the amended petition was heard, considered, and overruled. The administrator elected to stand on his demurrer, where-

upon the court entered its final judgment and decree approving the service by publication upon defendant H. T. Johnston, finding and adjudging him in default; and rendered judgment in favor of plaintiff and against said defendant for $925, with interest and $100 as attorney's fee, and further ordered that said judgment be a lien upon the interest of defendant H. T. Johnston, in the estate of Jesse S. Johnston and particularly upon the $871, "now in the hands of said administrator," enjoining and restraining defendant H. T. Johnston from collecting or attempting to collect or receive same from said administrator, divesting defendant H. T. Johnston of any right, title, or interest in this judgment and order, defendant Edwin Johnston, administrator, to pay and deliver said sum of $871 over to the clerk of the district court, to be applied by said clerk in satisfaction, pro tanto of the judgment. From this judgment and order, defendant Edwin Johnston, as administrator, alone appeals.

Two assignments of error are presented: (1) The court erred in overruling the demurrer. (2) The court erred in entering judgment against this defendant. These assignments may be considered together.

It is contended that it was error to overrule the demurrer for two reasons: (1) That the fund in controversy, the $871 in the hands of the administrator, was in legis custodia, and cannot be reached by a creditor's bill; (2) the district court had no jurisdiction over the person of this defendant as administrator, nor the subject-matter, to wit, the $871, in that the county court of McClain county had original exclusive jurisdiction over the person of the administrator and the fund in his hands as such.

The case presents the question whether, where a debtor has absconded so that no personal judgment can be obtained against him, and has no property in this state subject to attachment, but has money in the hands of an administrator belonging to him as his distributive share of an estate in process of administration, but no order of distribution has been made, it may be reached by an action in the nature of a creditor's bill, in the first instance without a previous judgment at law. It may be stated, as a general rule, that a creditor's bill will not lie until the claim of the creditor is reduced to judgment.

Many interesting cases are cited on the question of whether or not an executor or an administrator, in the absence of a statute authorizing it, is subject to garnishment at subject to garnishment after an order of distributee. A number of cases are cited which hold that he is not. Others are cited which

hold that an executor or administrator is subject to garnishment after an order of distribution is made in the court of probate jurisdiction fixing the amount payable and ordering same paid.

The general and almost universal rule is that, in the absence of a statute authorizing such proceedings, garnishment will not lie in any case until after an order of distribution is made. In states having statutes authorizing such garnishment, it is generally held that garnishment will lie at any time after the appointment and qualification of the executor or administrator, but that no final order directing the application of the fund to the claim of the creditor may be entered until after the order of distribution. In one state, Alabama, it is held that a creditor's bill will lie to reach the fund, and proceedings thereunder may be commenced before an order of distribution is made, but that no final order applying the fund can be made until an order of distribution. Brown v. Lang, 4 Ala. 50; Brown v. Lang, 14 Ala. 719, and Lang v. Brown et al., 21 Ala. 179. But this is from a state where garnishment is authorized by statute, and there the creditor was before the court and judgment had previously been obtained.

In the instant case, it is admitted that, at the time the action was commenced, no order of distribution had been made, and that, on that account, garnishment could not be had.

It is contended by defendant that, because no judgment had been obtained by the plaintiff upon its note, and the administrator not being subject to garnishment, no creditor's bill could be maintained to reach the fund in question and subject it to the payment of plaintiff's claim.

A situation is thus presented very similar to that in Pendleton v. Perkins et al., 49 Mo. 565, except that there the fund sought to be reached belonged to the debtor, but was in the city treasury of the city of St. Louis. The city of St. Louis was not subject to garnishment. Therein Mr. Justice Bliss, speaking for the court, after citing a number of authorities on the question of whether or not the bill could be maintained in the absence of allegations of fraud. trust, mistake, or some other recognized source of original chancery jurisdiction, held that such allegations were not necessarily essential, and in so holding said:

"The affirmation of the proposition that a judgment creditor, who has exhausted every ordinary means to satisfy his judgment, should have the aid of the court, in analogy to its ancient chancery jurisdiction, to reach his debtor's funds, whether fraudulently withdrawn or concealed or not, seems to be necessarily inferred from the main object of chancery jurisdiction to furnish a remedy when the strict rules of legal practice fail. Creditors ordinarily invoke its aid to pursue the effects of their debtors that are fraudulently withdrawn from their reach. But a debtor may be a money lender and be accumulating wealth, without having expressly withdrawn property from the reach of execution, and in the absence of our statutory remedies, he might defy his creditors unless chancery could subject his credits. The chancellor, in Donovan v. Finn (1 Hopk. Ch. [N. Y.] 59, 14 Am. Dec. 531) admits that, under his view, the common law has furnished no relief in a case of this kind, and denies the maxim that 'there is no wrong without a remedy.' "

On the question of whether there are circumstances that would authorize relief without a judgment, he cites Kipper v. Glancy, 2 Blackf. (Ind.) 256; Peay v. Morrison's Executors, 10 Gratt. (Va.) 149; Farrar v. Haselden (S. C.) 9 Rich. Eq. 331; Greenway v. Thomas, 14 Ill. 272, and Pope v. Solomon, 36 Ga. 541, and then says:

"It seems thus to be satisfactorily settled upon authority that, when the debtor has absconded, so that no personal judgment can be obtained against him and there is no statutory proceeding by which his property can be reached, a creditor's bill will lie in the first instance, and from the necessity of the case. It is analogous to a proceeding to subject the equities of a deceased debtor, or to satisfy a debt from a specific equitable fund, as to enforce a lien, in neither of which cases is a personal judgment required. * * *

"In most of the cases above cited, fraudulent practices were charged upon the debtor, as they are in a general way in the case at bar; but I have chosen to consider the question as divested of that element further than it adheres to all cases where a debtor possesses a fund from which he can satisfy his creditors, but absconds, without having done so. This is in itself fraudulent, in a sense, although no conveyances may be made or other contrivances resorted to with design to cheat and defraud."

On the question as to whether the city could be subjected to the proceedings, it was said:

"But, thirdly, the more difficult question arises whether the city can be subjected to this proceeding. Our garnishment act (sec. 3) exempts municipal corporations from its operation, and it is claimed that, upon the principle that equity follows the law, they should also be exempt from creditor's bills, or garnishments in equity. Municipal corporations, in this regard, are

classed with sheriffs, tax collectors, administrators, etc., who hold as trustees, and would be exempt without the statute. * * * Public policy forbids creditors from thus stepping in between the city and its public servants; and the statute, in seeking to prevent any future attempt in that direction, went much further, and included all kinds of liabilities, so that a debtor's funds, if in the hands of a municipal corporation, are placed beyond the reach of his creditors by statutory garnishment. There is no reason why a city, for an ordinary liability unconnected with present service, or the prosecution of its public works, should not, like private corporations, be held to answer a garnishment process.

"But the prohibition is general, and creditors like the present plaintiff are deprived of the usual remedy against their absconding debtors, if the latter have been sharp enough to place their funds in the city treasury. Upon what principle should this fact also deprive them of the equitable remedy they would possess if the garnishment process were unknown to the law? So far from that, it is the foundation of their right to relief. The maxim that equity follows the law has no such application; otherwise, in most cases where legal remedies fail, equitable relief would be cut off. The court, in analogy to the former relief in chancery, would disregard the letter of the statute forbidding garnishment, but would conform to its spirit and refuse to interfere when the reason for the prohibition existed. Perhaps the object of the prohibition was to leave the matter to another forum—to one whose remedies are more flexible than ordinary judgments—so that, whatever the relief, it may be consistent with public policy, and may be given in view of the debtor's relation to the city."

And finally it was said:

"To deny the relief sought would permit the debtor to withdraw property from the state which equitably belongs to his creditors. It is the policy of all states to protect home creditors, and in pursuance of this policy, and in absence of any other remedy, I think this proceeding should be sustained."

To the same effect is Earl v. Grove, Circuit Judge (Mich.) 52 N. W. 615. This case was one involving the question here involved, except in that case a judgment had been obtained in New York, but no judgment had ever been obtained in Michigan, where the bill was brought.

In Droop v. Ridenour, 9 D. C. App. 95, it was held:

"A bill in equity is maintainable by a creditor whose claim is not reduced to judgment, against a debtor who has absconded from the jurisdiction for the purpose of evading his creditors, to subject an equitable interest of the debtor to the payment of the debt, where the debtor has no property in the jurisdiction out of which the debt could be satisfied by proceedings at law."

And in the body of the opinion, it was said:

"The ground of the order dismissing the bill is understood to be, that the complainants had not sued for and recovered judgment at law, and issued execution thereon, and thus shown that they had exhausted all remedies at law. Under the facts of the case, as admitted by the demurrer, is such proceeding at law a necessary condition precedent to the relief asked in such a case as the present? We think not; and we think it would be lamentable, if such were the restrictions in the administration of justice in this district. If a party, by placing his property in trust and removing from the limits of this district, could thus defy the efforts of his creditors to subject such property to the payment of his debts, such defect of remedial justice would be a reproach to the law."

In Merchants Natl. Bank v. Paine et al., 13 R. I. 592, it was held:

"A. absconded in debt leaving no legal assets which could be attached, so that a judgment at law could not be obtained against him.

"Held, that his creditors could at once proceed in equity against his equitable assets to satisfy their legal claims. * * *

"The rule requiring the exhaustion of legal remedies before chancery will take jurisdiction of a legal debt rests on two reasons: First, that a judgment and execution returned unsatisfied are the best evidences of the debts; second, that legal tribunals should adjudicate legal claims. The first reason fails when legal process is impossible; the second is satisfied by a jury trial of issues from chancery."

In Ginn v. Brown, 14 R. I. 524, it was held:

"A. filed a bill in equity to subject to his claim as creditor, B.'s interest in the estate of B.'s deceased father. A.'s bill described B. as formerly of this state, now commorant in Massachusetts, as insolvent, and without attachable property, but did not aver that B. was nonresident in Rhode Island, and that service of legal process could not be made on him, nor did it aver the value of the father's estate over debts and expenses of administration in the hands of the Rhode Island administrator. On demurrer to the bill: Held, that in the absence of the above averments, the bill could not be sustained. Semble, that with averments showing the debtor to be nonresident,

with no legal assets subject to attachment in this state, and service of legal process on him to be impossible, the bill, under Merchant's National Bank v. Paine, 13 R. I. 592, would be good."

In the instant case, the allegations held necessary in Ginn v. Brown, supra, were clearly set forth in the petition.

We think, under the peculiar facts as admitted by the demurrer, a prior judgment was not essential to the prosecution of a creditor's bill.

Defendant contends that the judgment is erroneous, for the reason that the order directing him to pay the money into the clerk of the district court is an unwarranted interference with his duties, and in direct conflict with the order of distribution made by the county court directing him as administrator to pay the $871 to H. T. Johnston as his distributive share of the estate of Jesse S. Johnston, deceased. We think that this contention is without merit, as the order was not entered until after the order of distribution was made.

The authorities are almost uniform to the effect that such orders may be made in garnishment proceedings after the order of distribution is made, and that after such order is made, courts other than the court having probate jurisdiction may direct the application of the distributive share of the legatee or distributee to the payment of his debts. In many of these cases, it is specifically held that this is not a prohibited interference with the jurisdiction of the probate court. If such order can be entered in garnishment proceedings after order of distribution is made in the county court, there seems to be no sound reason why the same order may not be made in an equitable proceeding in a creditor's suit which is in the nature of an equitable garnishment.

To say that a debtor having valuable property coming to him from the estate of one deceased can, by absconding, for the very purpose, as alleged in the petition, of defeating his creditors, prevent the application of his share of the estate to the payment of his just debts, as we must say if we reverse the judgment, and thereby leave his creditors without remedial justice, is to say that the law is impotent to effectuate justice, and would be "a reproach to the law."

The judgment and decree should be affirmed.

BENNETT, TEEHEE, JEFFREY, LEACH,

and HALL, Commissioners, concur. HERR, Commissioner, absent.

By the Court: It is so ordered.

Note.—See "Creditors' Suits," 15 C. J. §19, p. 1390, n. 73; §77, p. 1404, n. 61.