The **GALION IRON WORKS AND MANUFACTURING COMPANY**, Plaintiff,

v.

**Truss RUSSELL, as Clerk of the United States District Court for the Western District of Arkansas, Trustee, A. K. Helms, and Dora Helms Bohon, Guardian of Arthur K. Helms, an incompetent, Defendants.**

Civ. A. No. 705.

United States District Court
W. D. Arkansas,
Texarkana Division.

Nov. 4, 1958.

---

\* Now 10 U.S.C.A. § 876.

Catlett & Henderson, Little Rock, Ark., for plaintiff.

Shaver, Tackett & Jones, Texarkana, Ark., for A. K. Helms & Dora Helms Bohon.

JOHN E. MILLER, Chief Judge.

The plaintiff, the Galion Iron Works and Manufacturing Company (hereinafter referred to as Galion), brought this action on July 17, 1958, denominated as a Creditor's Bill and seeking, in effect, an equitable garnishment of certain funds held in the Registry of the Court and due and owing to the defendant, Dora Helms Bohon, Guardian of the defendant A. K. Helms. The matter is now before the court on the motion of the defendants to dismiss for lack of jurisdiction.

This suit is the latest of a long series of actions involving these and other parties.

The pertinent events leading to this suit have been stipulated by the parties, and may be summarized briefly as follows:

On September 16, 1953, the plaintiff, Galion, recovered a joint and several judgment against several persons, including the defendant, A. K. Helms, in the United States District Court for the Eastern District of Arkansas. A short time later another judgment was recovered against Helms and others in the Pulaski County Circuit Court by the Union National Bank of Little Rock, Arkansas. The latter judgment was assigned to Galion, and the two judgments thus held by Galion totaled in excess of $40,000. Only a comparatively small sum has been collected on these judgments, and there is now owing to the plaintiff a sum thereon in excess of $36,887.37.

On August 14, 1955, almost two years after these judgments had been rendered, A. K. Helms was involved in an automobile accident with one Vouk, as a result of which he received physical injuries and was rendered incompetent. Shortly thereafter the defendant, Dora Helms Bohon, was duly appointed guardian of A. K. Helms by the Probate Court of Miller County, Arkansas. As Helms' guardian she brought suit against Vouk for the injuries Helms received as a result of the accident, and on December 7, 1955, recovered judgment against him in the amount of $25,000. Vouk's insurance carrier, Carolina Casualty Insurance Company, refused to pay any part of this judgment under a contention that there was no insurance coverage.

The guardian then brought suit against the Carolina Casualty Insurance Company, and on August 7, 1956, she obtained a verdict for her ward, A. K. Helms, in the sum of $15,600.

Two days following this verdict, on August 9, 1956, Galion, seeking to enforce its judgment against A. K. Helms, appeared in the United States District Court for the Eastern District of Arkansas and obtained the issuance of a writ of garnishment against the Carolina Casualty Insurance Company. A similar writ was obtained in the Pulaski Circuit Court. The Carolina Casualty Insurance Company denied owing any amount to A. K. Helms or his guardian on the ground that no judgment had been entered on the verdict. No notice of the attempted garnishment against Carolina Casualty was given to either A. K. Helms or Dora Helms Bohon, his guardian, and no further action has been taken in the garnishment proceeding.

On November 8, 1956, the guardian mailed notices to the attorneys for Galion and other creditors of the estate of her ward that she would apply on November 21, 1956, to the Probate Court of Miller County for the allowance of certain

claims against the estate of her ward. At this time no judgment had been rendered on the verdict of the guardian against the Carolina Casualty Insurance Company, and it does not appear that the estate held any other assets. On November 21, 1956, a hearing was held in the Miller County Probate Court pursuant to the guardian's notice, and on December 3, 1956, that court issued an order allowing certain claims against the estate of A. K. Helms, incompetent. The claims allowed were in the sums of $7,974.97, attorneys' fees for the guardian's attorneys; $1,453.88 to the United States Government for its claims; and $6,191 to the guardian for her claim against the estate "for cost and expenses on behalf of the ward."

On January 7, 1957, a judgment was entered on the guardian's verdict against the Carolina Casualty Insurance Company in the sum of $15,600, and at the same time a lien for attorneys' fees was impressed on that judgment in favor of the guardian's attorneys.

No further action was taken in any of the proceedings until December 12, 1957, at which time the Carolina Casualty Insurance Company filed an interpleader suit in the United States District Court for the Eastern District of Arkansas, and deposited the sum of $16,628.45, which represented the amount of the judgment, interest, and costs held against it by Dora Helms Bohon as guardian of A. K. Helms. The court issued an order restraining all parties from further enforcement of the garnishment proceedings. Shortly thereafter the interpleader suit was transferred to the United States District Court for the Western District of Arkansas, Texarkana Division, being Civil Action No. 685. The United States was allowed to intervene and assert its claim in the interpleader suit. The guardian and Galion answered and asserted their claims against the funds held in the Registry of the Court. On January 31, 1958, all parties stipulated for a disbursement of a portion of the funds, including the claim of the United States

in the amount of $1,533.85, representing taxes due it with interest from the date of the judgment in the Probate Court; and the sum of $8,883.99, representing the attorneys' fees allowed by the Probate Court and certain additional expenses allowed by that court to the attorneys on January 22, 1958. On January 31, 1958, an order was issued disbursing the funds in accordance with the stipulation, thus leaving a balance in the Registry of the Court of slightly in excess of $6,000. No further proceedings were taken in the interpleader suit, and no judgment has ever been entered therein.

The plaintiff, Galion, then brought the instant suit on July 17, 1958, to reach, by way of equitable garnishment, the balance in the Registry of the Court. The Clerk of the Court filed a disclaimer alleging the sum held is $6,065.21, and disclaiming all personal right, title or interest in the sum.

On August 6, 1958, the defendant, Dora Helms Bohon, individually and on behalf of her ward, A. K. Helms, moved to dismiss this suit for lack of jurisdiction. The guardian contends that the Probate Court of Miller County, Arkansas, acquired prior jurisdiction of the subject matter and the parties, and further that its jurisdiction is exclusive and that the claims here have already been adjudicated.

The plaintiff concedes the validity of the principle that prior jurisdiction of the Probate Court would prevent jurisdiction of this court, but contends that the Probate Court never acquired jurisdiction of Galion because, admittedly, notice of the hearing in Probate Court for claims against the estate was mailed to the attorneys for Galion and not to the company itself. This contention rests upon the premise that the notice was insufficient, and further that proper notice was jurisdictional.

■ The contentions of the parties require consideration of the applicability of two general rules of law. It is well settled that where a state court acquires prior jurisdiction of a proceed-

ing, its jurisdiction may not be disturbed by the federal courts. In Redditt v. Hale, 8 Cir., 1952, 199 F.2d 386, at page 391, the court said:

"The Arkansas estate of the incompetent is still in the possession of the Arkansas Probate Court, and that possession once rightfully acquired may not be disturbed by another court, State or Federal."

■ It is an equally well settled rule that federal courts may not engage in the general administration of an estate or disturb the possession of property within the custody of a state court. See Markham v. Allen, 1946, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256, and cases cited.

From the general statement of these two rules it is clear that if the Probate Court of Miller County, Arkansas, acquired prior jurisdiction of the claims against the estate, or if action by this court would disturb the general administration of the estate, this court has no jurisdiction of the case.

■ With regard to the plaintiff's contention that the Probate Court of Miller County did not have jurisdiction of the plaintiff, it should be noted that the order of the Probate Court did not purport to affect or distribute the funds held in the Registry of this court. The Probate Court never at any time had actual physical possession of these funds and, in fact, they were not placed in the hands of this court until after the orders of allowances were made by the Probate Court. It is clear that the orders of the Probate Court did not affect these funds, and it did not have jurisdiction over these funds as such unless its right to possession, through the guardian, gave it such jurisdiction. It may be, since the possession of a guardian, as an officer of the appointing court, is possession of the court, Byers v. McAuley, 1892, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867, that the right to possession on the part of the guardian would confer jurisdiction of the Probate Court over the funds themselves, and that jurisdiction should be recognized as a matter of comity. That question, however, is unnecessary to a decision. It is equally unnecessary to decide whether the notice of hearing given the plaintiff through its attorneys was sufficient to confer jurisdiction of the Probate Court over the plaintiff, because it appears, and there is no contention to the contrary, that the Probate Court did acquire jurisdiction over the general estate and person of the incompetent, and in so doing had sole jurisdiction to allow claims against the estate. No other court, state or federal, could allow claims against the incompetent or his estate. State or federal courts may entertain suits to *adjudicate* claims against an estate, and those adjudications must be respected by the Probate Court, but it is nevertheless only the Probate Court which can *allow* such claims. As the Supreme Court said in Byers v. McAuley, supra, at page 620 of 149 U.S., at page 910 of 13 S.Ct.:

"A citizen of another State may establish a debt against the estate, (Yonley v. Lavender, 21 Wall. 276 [22 L.Ed. 536]; Hess v. Reynolds, 113 U.S. 73, 5 S.Ct. 377 [28 L.Ed. 927]. But the debt thus established must take its place and share of the estate as administered by the probate court, and it cannot be enforced by process directly against the property of the decedent."

Thus, this court might adjudicate a claim against the estate, and if it did so, that adjudication could be presented to the Probate Court for allowance. But here the claim against the estate has been adjudicated and reduced to judgment, the validity and amount of which is admitted. The plaintiff is asking not that this court adjudicate its claim against the estate, but that this court, in effect, make an allowance in the form of a garnishment on the basis of the plaintiff's judgment, and then, on the ground that funds are in its possession, proceed to make a distribution. Even if this court were empowered to go thus far into the administration of probate matters, the Probate Court unquestionably acquired prior jurisdiction to *allow*

claims against the incompetent by virtue of its prior jurisdiction over the incompetent and his estate, even though it may not have acquired jurisdiction to award *distribution* of these particular funds. Since an allowance of the claim of the plaintiff would necessarily be a condition precedent to this court's power to distribute these funds, and since the Probate Court obtained prior jurisdiction to allow claims against the incompetent and his estate, this court has no jurisdiction to award the relief sought, notwithstanding its possession of the funds. In the language of the McAuley case just quoted, the plaintiff's debt, which has been established against the estate, "must take its place and share of the estate as administered by the probate court, and it cannot be enforced by process directly against the property of the decedent." In other words, the possession of funds by this court gives it at most, the power to distribute the funds, but before such a distribution can be made an allowance of claim must be made in the court having jurisdiction over the incompetent and his estate. The court concludes, therefore, that the prior jurisdiction of the Probate Court over the incompetent and his estate prevents this court from making an allowance and subsequent distribution of the funds.

This conclusion becomes even more clear and compelling when it is recalled that the federal courts are not granted jurisdiction to engage in the general administration of an estate or to disturb the administration of an estate being administered by a probate court, and this rule creates a second objection to the jurisdiction of this court. In Markham v. Allen, 1946, 326 U.S. 490, at page 494, 66 S.Ct. 296, at page 298, 90 L.Ed. 256, the court said:

"It is true that a federal court has no jurisdiction to probate a will or administer an estate * * *. But it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court. Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 43, 30 S.Ct. 10, 12, 54 L.Ed. 80, and cases cited. See Sutton v. English, supra, 246 U.S. [199] 205, 38 S.Ct. [254] 256, 62 L.Ed. 664; United States v. Bank of New York & Trust Co., 296 U.S. 463, 477, 56 S.Ct. 343, 347, 80 L.Ed. 331; Commonwealth Trust Co. [of Pittsburgh] v. Bradford, 297 U.S. 613, 619, 56 S.Ct. 600, 602, 80 L.Ed. 920; United States v. Klein, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840; Princess Lida [etc.] v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285.

"Similarly while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, Penn General Casualty Co. v. [Commonwealth of] Pennsylvania, 294 U.S. 189, 195, 196, 55 S.Ct. 386, 388, 389, 79 L.Ed. 850, and cases cited; United States v. Bank of New York & Trust Co., supra, 296 U.S. 477-478, 56 S.Ct. 347, 348, 80 L.Ed. 331, and cases cited, it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court. Commonwealth Trust Co. v. Bradford, supra, 297 U.S. 619, 56 S.Ct. 602, 80 L.Ed. 920; United States v. Klein, supra, 303 U.S. 281, 58 S.Ct. 538, 82 L.Ed. 840, and cases cited."

Thus, while there is no power in the federal courts to disturb the administration of an estate by the state probate courts or to enter into a general admin-

istration, the federal courts, like those of a state, may entertain actions which have as their purpose the "establishment of claims" against the estate. But as indicated in Byers v. McAuley, supra, it is "the controverted question of debt or no debt" against the estate which may be heard by the federal courts. See also, Hess v. Reynolds, 113 U.S. 73, 5 S.Ct. 377, 28 L.Ed. 927; Clark v. Bever, 139 U.S. 96, 11 S.Ct. 468, 35 L.Ed. 88. The Supreme Court in Commonwealth Trust Co. of Pittsburgh v. Bradford, 297 U.S. 613, at page 619, 56 S.Ct. 600, at page 602, 80 L.Ed. 920, speaking of guardians, executors, and administrators, said:

"The jurisdiction of federal courts to entertain suits against the latter is clear, *when instituted in order to determine the validity of claims against the estate or claimants' interests therein.* Such proceedings are not in rem; they seek only to establish rights; judgments therein do not deal with the property and order distribution; they adjudicate questions which precede distribution. Byers v. McAuley, 149 U.S. 608, 620, 13 S.Ct. 906, 37 L.Ed. 867; Security Trust Co. v. Black River National Bank, 187 U.S. 211, 227, 23 S.Ct. 52, 47 L.Ed. 147; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 43, 30 S.Ct. 10, 54 L.Ed. 80; Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 73 L.Ed. 669; Harrison v. Moncravie, 8 Cir., 264 F. 776, 779." (Emphasis added.)

This suit, as already noted, seeks not to establish a claim against the incompetent's estate, but to enforce a claim against the estate already established by judgment and undisputed by the guardian, rather than to enforce that claim through the procedure provided in the state probate court.

■■ If jurisdiction were to be entertained by this court, the court would have to either award the funds to the plaintiff under its prayer for equitable garnishment or distribute the funds in accordance with the priorities provided

by state law. Ark.Stat.Ann., Sec. 62–2606 (Supp.1957), relates to the priorities of claims against estates, and was applied by the probate court in allowing the claim of the guardian as an individual against the incompetent's estate. This section establishing priorities of claims against estates on its face relates only to decedents' estates and not to those of incompetents, but Ark.Stat. Ann., Sec. 57–603(c) (1957 Supp.), provides that where no specific rule is set forth for guardianship matters, the rule specified in the probate code relating to decedents' estates shall apply. Proceeding under this section, the Probate Judge classified the claims for attorneys' fees and the claim of the United States for taxes as class "A", and the claim of the guardian as an individual as a class "B" claim. No other claims were presented or allowed, although, unless a statute of limitations prevents it, the liquidated claim of the plaintiff may be presented to the probate court for allowance and classification at any time. The court's conclusion that Arkansas law provides for the classification of claims against an incompetent's estate as well as for those against a decedent's estate is buttressed by the action of the probate court in so treating the claims presented. The decision of a state trial court is, of course, not binding upon a federal court in diversity actions. King v. Order of United Commercial Travelers, 1948, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608; cf. Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109. But decisions of trial courts, though not binding, are persuasive, particularly when, as here, they deal with subjects peculiarly within the knowledge and experience of state courts. See Pitts v. Hamrick, 4 Cir., 1955, 228 F.2d 486; Robles v. Folsom, 2 Cir., 1956, 239 F.2d 562, certiorari denied 1957, 353 U.S. 960, 77 S.Ct. 869, 1 L.Ed.2d 911; Blackmon v. Govern, D.C.N.J.1956, 138 F.Supp. 884; Russo v. Merck & Co., D.C. R.I.1956, 138 F.Supp. 147; Oriole Paper Box Co. v. Reliance Ins. Co., D.C.Md., 1957, 153 F.Supp. 264. Thus, if the

funds are to be awarded to the plaintiff under its claim of garnishment, the effect of the court's action would be to by-pass the requirement of state law for the classification by priority of claims against the estate.

The plaintiff cites cases from several state courts as holding that an equitable garnishment is not an interference with an administration in probate court. Gorman v. Stillman, 24 R.I. 264, 52 A. 1088; Craig v. Wayne Circuit Judge, 192 Mich. 106, 158 N.W. 15; Johnston v. Byars State Bank, 141 Okl. 277, 284 P. 862; Fremont Farmers Union Cooperative Ass'n v. Markussen, 136 Neb. 567, 286 N.W. 784, 123 A.L.R. 1287. These cases, however, cannot be persuasive because they present a matter vastly different from the case at bar. In each of the cases cited a legatee or distributee of a decedent's estate was a judgment debtor and his creditors attempted by some form of garnishment to reach money in the hands of the personal representative of the decedent which were due to the distributee. It may be, as these cases seem to hold, that moneys held by a personal representative or guardian and due to a third person could be reached by garnishment, and that such an action would not be an interference with the administration of the estate in probate, but such a rule does not argue for the proposition urged by the plaintiff that a garnishment against a guardian or personal representative will lie in a court not administering the estate as a substitute for a claim against the estate itself. In the cases cited by the plaintiff the decrees of the probate court are recognized and given full authority by the action of the creditors against third persons who claim property by virtue of those decrees. In this case, had the probate court allowed a claim of a third person against the incompetent's estate and had the plaintiff proceeded for a garnishment of the funds due to such person, it would be giving full authority and recognition to the decrees of the probate court and claiming under those decrees

rather than opposing them. This, however, is not what the plaintiff seeks in this case. The plaintiff is claiming moneys admittedly due and owing to the estate itself, and if it is successful, it will have by-passed the jurisdiction of the probate court and avoided the right of that court to administer the estate, classify and allow claims, and disburse funds in accordance with state law. That procedure can be nothing more or less than a serious interference with the jurisdiction of the state court in its administration of the estate. If the relief sought by the plaintiff is granted, this court would be acting completely without reference to the priorities provided by state statute and to the claims allowed by the probate court. The fact that this court has possession of the funds sought does not in any way mitigate the fact that a disposition of them here would deprive the probate court of any effective jurisdiction over the estate it administers, because the disposition sought by the plaintiff would effectively eliminate state law from a case dependent upon diversity of citizenship. This court cannot say on the one hand that the state court, through its officer— the guardian—is entitled to possession of the funds, as it must be if the plaintiff may garnish them, and on the other hand hold that those funds must be withheld from the probate court and administered to defeat the governing state law. Since the relief sought by the plaintiff would not only disturb but would completely nullify the administration in the state court, there can be no jurisdiction vested in this court.

The same result would be reached if this court attempted to dispose of the funds in accordance with the priorities provided in state law. If it followed this course, the court would be not only interfering with the proper administration of the estate but would also be undertaking to engage in the general administration of the estate.

Aside from the question of whether such an action would unduly disturb the administration of the probate

court, however, it is well settled that in a case based upon diversity of citizenship, as this one is, that if the applicable state law does not afford the remedy sought in a state court of general jurisdiction, the federal courts cannot assume jurisdiction. This has been the rule developed by the Supreme Court of the United States beginning among its earliest decisions in regard to probate matters. In Gaines v. Fuentes, 1875, 92 U.S. 10, at page 20, 23 L.Ed. 524, the Supreme Court said:

"* * * and if by the law obtaining in the State, customary or statutory, they can be maintained in a State court, whatever designation that court may bear, we think they may be maintained by original process in a Federal court * * *."

In Farrell v. O'Brien, 1905, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101, referring to Ellis v. Davis, 109 U.S. 485, 3 S.Ct. 327, 27 L.Ed. 1006, the Supreme Court said beginning at page 107 of 199 U.S., at page 733, of 25 S.Ct.:

"The court expressly reaffirmed the want of power in a Federal court of equity to set aside the probate of a will in the absence of a state statute giving the right in the courts of the state to such equitable relief * * *.

* * * * * *

"In Byers v. McAuley, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867, it was decided that a Federal court cannot exercise original jurisdiction in respect to the administration of the estate of a decedent, and that it cannot, by entertaining jurisdiction of a suit against the administrator, draw to itself the full possession of the estate * * *.

"Let us, then, first deduce the principles established by the foregoing authorities as to the power of a court of the United States over the probate or revocation of the probate of a will. An analysis of the cases, in our opinion, clearly establishes the following: * * *

"* * * where a state law, statutory or customary, gives to the citizens of the state, in an action or suit inter partes, the right to question at law the probate of a will or to assail probate in a suit in equity, the courts of the United States in administering the rights of citizens of other states or aliens will enforce such remedies.

* * * * * *

"* * * The question, therefore, reduces itself to a narrow compass; that is, what remedies do the laws of Washington create for the purpose of the probate of wills and the revocation of a probate, and are those remedies exclusively probate in their character or necessarily merely ancillary thereto, or do they confer upon the state courts general legal or equitable authority on the subject merely because of the existence of a controversy?"

In Sutton v. English, 246 U.S. 199, at page 205, 38 S.Ct. 254, at page 256, 62 L.Ed. 664, the Supreme Court reviewed and approved the Farrell case, and said:

"It is the contention of appellants that the United States District Court had original jurisdiction of this cause (there being diversity of citizenship and a sufficient amount in controversy) because jurisdiction over a suit in equity of the same character would have existed in the county or district courts of the state.

"In order to test this, we must consider the nature and extent of the jurisdiction of the courts referred to, as established by the Constitution of Texas and statutes passed in pursuance thereof * *.

* * * * * *

"The present suit being, in an essential feature, a suit to annul the will of Mary Jane Hubbard, and a proceeding of this character being by the laws of Texas merely supplemental to the proceedings for probate of the will and cognizable only by the probate court, it follows from

what we have said that the controversy is not within the jurisdiction of the courts of the United States."

This rule has been reiterated by several courts of appeals. In Holt v. King, 10 Cir., 1957, 250 F.2d 671, at page 675, the court said:

"Rice v. Sayers, 10 Cir., 198 F.2d 724, was a suit to nullify certain trusts created by will. This court held that under Kansas law the action was one to contest a will and was an action over which the Kansas probate court had exclusive jurisdiction. Accordingly, as the Kansas courts of general original jurisdiction were without jurisdiction, the federal court likewise had no jurisdiction."

In Looney v. Capital National Bank of Austin, Texas, 5 Cir., 1956, 235 F.2d 436, at page 438, the court said:

"It is well settled that, where state courts of general jurisdiction are granted the power to determine inter partes the validity vel non of provisions of a will, a United States court in that state has jurisdiction to entertain such an action where the requisite diversity of citizenship and amount in controversy are present, and so long as it does not interfere with the administration of the estate in a state court. Simler v. Wilson, 10 Cir., 210 F.2d 99; same case on last grant of certiorari 350 U.S. 892, 76 S.Ct. 153 [100 L. Ed. 98]; Sutton v. English, 246 U.S. 199, 205, 38 S.Ct. 254, 62 L.Ed. 664; Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256."

See also White v. White, D.C.S.D. Idaho 1954, 126 F.Supp. 924, at page 926; compare Wahl v. Franz, 8 Cir., 1900, 100 F. 680, 49 L.R.A. 62.

The rule illustrated by these decisions is not only a guide to indicate whether probate jurisdiction would be interferred with by a granting of the relief sought; it is also a corollary of the rule in diversity cases, as this one is, requiring the application of state law. In Jackson v. United States National Bank, Portland, Oregon, D.C.Or.1957, 153 F. Supp. 104, at page 111, the court in considering this question, pointed out:

"Moreover, since Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, there is to be considered the further policy limitation that, inasmuch as 'a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State' (Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079), federal diversity jurisdiction, even over suits in equity which fall within the scope of 1789 jurisdiction of the English High Court of Chancery, should be disavowed as to actions 'to which the State had closed its courts' (Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 537, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524; Griffin v. McCoach, 1941, 313 U.S. 498, 507, 61 S.Ct. 1023, 85 L.Ed. 1481; cf. Williams v. Minnesota Mining & Mfg. Co., D.C.S.D.Cal.1953, 14 F.R.D. 1, 9)."

Under this rule it becomes necessary to determine whether Arkansas awards to its probate courts sole jurisdiction for allowance of claims, such as presented here by the plaintiff, and withholds from its courts of equity the power to enforce a garnishment against an executor, administrator, or guardian. If so, then this court can have no jurisdiction.

In Thorn & Robins v. Woodruff and Rutherford, 1843, 5 Ark. 55, the Supreme Court of Arkansas, quoting a Delaware case [Marvel v. Houston, 2 Har. 349], said:

"'* * * the act of assembly settles the priority of payment of debts in the administration of assets, and it will not do to allow it to be disturbed in this way. By allowing the debtors of an estate to be garnisheed, the assets might be divested from their lawful course of

application. Thus funds applicable to judgment debts might be arrested and applied to simple contract debts. Neither an administrator, therefore, nor a debtor of the estate, can be attached or summoned as a garnishee.' "

The Arkansas Supreme Court added:

"To subject executors or administrators to the process of garnishment, might destroy the whole operation and intention of our law of administrations. We are, therefore, of opinion that an executor or administrator, as such, is not subject to garnishment."

The rule was reiterated by the Arkansas Supreme Court in Gill v. Middleton, 1895, 60 Ark. 213, 29 S.W. 465, under facts indicating that the question is jurisdictional rather than merely procedural:

"The appellee instituted garnishment proceedings against the appellant, as administrator, before a justice of the peace, and obtained judgment. This judgment was presented to the probate court for allowance and classification against the estate of which appellant was administrator. The claim was disallowed, and the appellee appealed to the circuit court, where he obtained judgment, from which this appeal was prosecuted.

"An administrator is not subject to garnishment. The proceedings before the justice, the basis of this action, were coram non judice, and void." (Citing authorities.)

There is no difference between the garnishment of an executor or an administrator, and the garnishment of a guardian so far as these principles are concerned, and they apply with equal vitality either to the personal representative of a decedent's estate or to a guardian of an incompetent's estate. From the cases cited it is clear that under Arkansas law, claims such as presented by the plaintiff here as an equitable garnishment are claims which must be administered through the Arkansas probate courts, and the courts of general jurisdiction in Arkansas are refused the power to upset the administration of estates and to allow the priorities of claims against estates to be circumvented by a garnishment proceeding, and this applies no less to equitable than to legal garnishments.

■■■ Since the federal courts in the exercise of either original or removal jurisdiction in diversity cases are bound by and follow the laws of the states in which they sit, and cannot create or enforce remedies not provided by those laws or remedies which are expressly forbidden by those laws, the relief sought here by the plaintiff is beyond the jurisdiction of this court, just as it is beyond the jurisdiction of the state courts of general jurisdiction in Arkansas.

■■■ It must be pointed out, however, that the orders of the Probate Court of Miller County, Arkansas, in allowing the claim of the guardian for her expenses do not, absent a statute of limitations, necessarily bar the plaintiff from presenting its claim in the probate court nor will this decision do so. As the court said in the case of Galleher v. Grant, D.C.N.D.Ill.1958, 160 F.Supp. 88, at page 93:

"The order of the Probate Court entered December 28, 1956 is not one which this court has jurisdiction to declare null and void. If the plaintiff's possession in the instant case is contrary to law, it is to be assumed that the state reviewing tribunals will correct such order and this court has no power or function to do so. Conceivably, also the Probate Court after hearing on the objections filed before it may enter a different order."

Although the court finds no jurisdiction to award the relief sought in this case, the funds remain in the Registry of the Court by virtue of the interpleader suit, Civil Action No. 685.

It appears from what has been said that the questions in the interpleader

suit are rendered moot by this decision, and upon proper motion in that action the funds may be transferred to the guardian, not in satisfaction of her individual claim against the estate, but to her in her capacity as guardian and subject to the further orders of the Probate Court. However, if a motion to that effect is presented in the interpleader suit, the plaintiff will have full opportunity to oppose that motion by appropriate pleadings and briefs if there are additional points to be raised which are peculiar to that suit.

Therefore, an order is being entered today sustaining the defendants' motion to dismiss and dismissing the Creditor's Bill or complaint for lack of jurisdiction.